## CATHARINE G. JOHNSON *vs.* JOSEPH BENNETT.

It is not true that a sale and conveyance by a trustee, of the trust property, so that he becomes the purchaser himself, is void. Such a sale and conveyance is capable of confirmation by the express act of the *cestui que trust*, by acquiescence, and lapse of time; and a title acquired by a subsequent purchaser in good faith and without notice of the subject conveyed, will be good, without dispute. *Per* BROWN, J.

Sales and conveyances of this character are voidable only. They are voidable in the equity courts, at the instance of the *cestuis que trust* alone, not because they are fraudulent, or for inadequacy of price, but upon a rule of morality and policy having reference to human infirmity, which forbids that a man shall act as vendor, for others, and as purchaser, for himself, of the same subject matter and at the same time.

The grounds upon which courts of equity interfere between *cestuis que trust* and trustees and their grantees with notice, affirm the validity and force of the title at law. Otherwise such courts would have no jurisdiction.

Though the trustee may have acted from the best motives, and the sale may have been fairly conducted, and the price obtained full and ample, yet the courts will open and order a resale if the parties—the *cestuis que trust*—are not satisfied with it, and they make their claim, and their bill is filed within a reasonable time.

A decree vacating a sale of that kind will be upon terms, in regard to the purchase money already paid and perhaps distributed in execution of the trusts, so as to insure justice and equity to all concerned.

A *cestui que trust*, after having assented to a sale made by the trustee, by accepting his share of the proceeds, cannot maintain ejectment to recover possession of his share of the land, on the ground that the sale was void.

Where a testator directed his executors to sell certain land, convert it into money, and invest it until the youngest child should become 18 years of age, and then distribute the same among his children; *Held* that this presented a case of *equitable conversion*, and the estate became impressed with the character of personal property, and was to be distributed as such.

And the land having been sold by the executors, and the share of one of the married daughters of the testator, in the proceeds, paid over to her husband, who gave his receipt therefor; *Held* that the husband thereby extinguished all claim which he had upon the proceeds, as such husband, as well as all claim which his wife had upon the lands sold.

THIS was an action to recover the possession of certain premises in the town of Westfield, Richmond county. The plaintiff was nonsuited, and her complaint dismissed, on the trial at the circuit, and upon exceptions taken, she moved for a new trial.

*Truman Smith*, for the plaintiff. I. *Prima facie* the plaintiff, on the death of her father, acquired a title to one-ninth part of the premises, which was increased to a one-eighth by the death of her brother Stephen in 1818, and to a one-seventh by the death of her brother Henry in 1819. Was this title affected in any degree by the will of John Seguine, which took effect on his death in 1813 ? Not at all. The clause relating to these premises is as follows : " I order and require that all my land lying south of Wood Row shall be sold as soon after my decease as possible, and, when sold, the proceeds shall be put out at interest, and the interest regularly paid unto my wife, until my youngest child is eighteen years of age, provided my wife does not marry." Now, there is a distinction between a devise of land to executors, with a power to sell, and a mere direction to executors to sell. In the former case, we have a power coupled with an interest, and in the latter, one which is simply collateral, and without interest, or what the law denominates " a naked power." When the power is coupled with an interest, the estate vests in the donees of the power, but where it is not so coupled, or where it is collateral and naked, the estate descends to the heirs at law, and remains vested in them until the power is properly executed. In the case of *Bergen and another* v. *Bennett*, (1 *Caines' Cas.* 15,) Mr. Justice Kent, in language alike appropriate and just, lays down the rule as follows, to wit : " If a man, by his will, directs his executors to sell his land, this is but a bare authority without interest ; for the land in the mean time descends to the heirs at law, who, until the sale, would at common law be entitled to the profits ; but if a man devises his lands to his executors to be sold, then there is a power coupled with an interest, for the executors in the mean time, take possession of the lands and of the profits." In the present case, the testator did not devise the premises to his executors with power to sell, &c. ; they derived no estate or interest whatever under the will, and were not authorized to take the rents, issues and profits. The

Johnson *v.* Bennett.

testator simply ordered and required them to sell the premises as soon as possible, and he thus gave them a power which was wholly collateral to the estate. It was a mere naked power, or as Judge Kent denominates it, " A bare authority, without interest," so that the plaintiff undoubtedly took, on the death of her father, a title or right to an undivided share in the premises, the power in the will notwithstanding. The estate, or interest, became and was vested in her as one of the heirs at law, and the only question is whether that estate has been divested by any subsequent proceeding taken by the executor and executrix under the will.

II. The deed of the 27th April, 1826, from Joseph and Margaret Seguine to Robert Seguine, was and is, on its face, null and void, for the following reasons : 1. It is at least doubtful whether the deed is so drawn as to be in form or substance an execution of the power in question. It is true, in the introductory part of the deed, the grantors characterize themselves as executor and executrix ; but that may be, and we submit is, a mere *descriptio personarum.* Then, in the operative part, they commence with the intimation that they were thereby executing, or attempting to execute the will, but, subsequently, they speak and act in their individual character, and in that only. It is Joseph and Margaret who "grant, bargain, sell, alien, enfeoff, convey and confirm * * * * all the estate, right, title, interest, property, claim and demand whatsoever," which they, the said Joseph and Margaret had in the " granted and bargained premises," but not the estate, right, title and interest which the testator had therein, at his decease, and finally they appropriately sign the instrument as individuals, and not in their representative capacity. This is not sufficient. 2. However this may be, we submit that Joseph Seguine, as executor, and Margaret Seguine, as executrix, had no power whatever to sell and convey this property under the will, in April, 1826. " *I order and require that all my land lying south of Wood Row shall be sold as soon after my decease as possible.*" We deny that a sale in 1826,

that is to say more than twelve years and six months after the death of the testator, was even a nominal execution of such power. (*a.*) The language of the clause is exceedingly peremptory : " *I order and require that all my land lying below the Wood Row* shall be sold." At any indefinite time ? Not at all; but " as soon after my decease as possible." Not for any particular sum or amount ; for the testator knew that to require the executors to obtain any precise number of dollars per acre might postpone a sale indefinitely. He left them, therefore, to obtain what they could for the property, but ordered them to sell as soon as possible. No doubt he did not intend or expect such precipitancy as would recklessly sacrifice this property, but his representatives were at once, after qualifying, to enter on the business of selling, and were, by advertising and other suitable measures, to effect a sale as soon as possible. If they could not sell at one price, they were bound to sell at another. The testator may be presumed to know the situation and character of the estate, the condition of the market, and what was for the interest of his family. It is obvious he was of the opinion that an immediate sale was practicable. Had he not a right to order it? From whom did the executor and executrix derive an authority to set aside *the will* in this respect ? It is insisted that a sale at the end of more than twelve years and a half after the death of the testator, was not a good execution of the power. (*b.*) Assuming that the executor and executrix, in executing the deed of the 27th of April, 1826, must be understood to speak and act in their representative capacity, then it is submitted that such deed is void, for the reason that it does not sufficiently appear on the face of the instrument that it was made or given in conformity to the power. (*c.*) But the objectionable character of this proceeding is greatly enhanced by the fact that one of the devisees of the power (the executrix) is made both the immediate and the principal beneficiary of its execution. The testator first directs the land in question to be "sold, as soon after his decease as possible," and

then the will proceeds as follows : " The proceeds shall be put out at interest, and the interest regularly paid unto my wife, until my youngest child is eighteen years of age, provided my wife does not marry." By a subsequent clause he gives to his wife all the residue of his estate, both real and personal, until his youngest child attains the age named; but in case she married, she was to have certain specific legacies, and after that date, whether she married or not, one-third of the proceeds of all his property, which he directed to be sold and put out at interest for her use during life. So that she was to have the whole interest of the proceeds of the Wood Row property till his youngest child was eighteen, and thereafter one-third of the interest arising from his whole estate. The youngest child was her son Bornt, who was born on the 21st day of October, 1807, and who of course attained 18 years of age in October, 1825. Now, during the whole of the time that elapsed after the decease of the testator up to the date of the deed of April 27, 1826, she remained occupying this land, in place of selling it as soon as possible. How much the dwelling house, fences and soil deteriorated in the meantime, it is difficult now to say—no doubt very considerably. And what makes the case worse for the defendant is, that his testator (the other executor) came in under the executrix, as her tenant, and helped her consume the property and eat out its substance. (*d.*) It is shown that the testator intended to make a provision for his wife, far beyond the value of dower, and one-third of such personalty as might remain after paying his debts. It was competent for her to waive a provision in her favor, and she did so by not selling in conformity with the will. The estate having descended to and vested in the heirs at law, on the death of the testator, was, for the reason here indicated, discharged of the power long before the 27th day of April, 1826, and then the title became absolute in their hands. (*e.*) We have already adverted to the distinction between a power coupled with an interest and a collateral or naked dower, in respect to the operation and effect of the one

or of the other on the inheritance. But there is another distinction, which, perhaps, in this case, is more important, and that may be found in the difference in construction which courts of law ever make between them. If the estate and power be associated, or, in other words, vested in one and the same person or persons, then the courts give a liberal construction to the power, and uniformly turn over parties claiming to have been aggrieved by its exercise to courts of equity. The reason is obvious ; the donees of the power hold the inheritance and have the legal right, and it is with such rights that courts of law deal, and with those only. An abuse of the power cannot divest the estate, and when the party complaining gets into equity he must do equity. The whole subject is there liberally considered. But where the power is merely collateral, or, in other words, where the estate is vested by inheritance in one set of persons, and the power is by will given to another, it is *strictissimi juris,* and the validity of its execution has to undergo a rigid ordeal. ·The question is uniformly made in courts of law. (*Co. Litt.* 181 *a*, 236 *a*. 4 *Kent,* 320–325. *Sugd. on Vend.* 319. *Pow. on Devises,* 291–310.) The distinction referred to is recognized in *Bergen and another* v. *Bennett,* (1 *Caines' Cas.* 15,) where Kent, justice, says, that in the case of a naked power, " if one executor dies the power at common law would not survive," but that in the other case, " as the estate so also the trust would survive to the surviving executors." So, also, where there is a power to dispose of lands by devise or will, such power cannot be executed by grant ; and on the other hand, where the agency is to be the latter, the donee of the power cannot resort to the former. (4 *Kent.* 331. *Moore* v. *Diamond,* 5 *R. I. Rep.* 121.) So where a power is conferred, as in this case, to sell lands, it is not competent for the grantee of the power to mortgage them. (*The Albany Fire Ins. Co.* v. *Bay,* 4 *Comst.* 9.) So, where a power is granted to sell by and with the consent and advice of two or more persons, the consent of all is indispensable, and the death of either

Johnson *v.* Bennett.

abrogates the power, and renders its execution impossible. (*Barber* v. *Cary*, 1 *Kern.* 397.)   But it is useless to multiply cases.   Judge Kent, in his Commentaries, (*vol.* 4, *p.* 330,) does ample justice to the subject.   He says : " It is the plain and settled rule, that the conditions annexed to the exercise of the power must be strictly complied with, however unessential they might have been if no such precise directions had been given.   They are incapable of admitting any equivalent or substitution, for the person who creates the power has an undoubted right to create what checks he pleases to impose to guard against a tendency to abuse.   The courts have been uniformly and severely exact on this point."   But it seems that the supreme court has had to do with the element of time, as one of the conditions to a valid execution of a power ; and has said that the testator has a right to prescribe such a condition, and that it is the duty of the court to enforce it. (*Richardson* v. *Sharpe*, 29 *Barb.* 222.)   What are we to think of a peremptory order that the donees of the power " Shall sell as soon after" the decease of the donor " as possible ?" and no sale till after the lapse of more than thirteen years and six months ?  Besides, the directions were, that the land lying south of Wood Row should be sold as soon *after* as *possible*, but that all the land north of said road (meaning his homestead) should be sold when his youngest child should attain 18 years of age.   So that the sales were to be made in a precise order.   First, the land south, as soon after the will should take effect as possible, and the land north (or the homestead) on the event named, which we have seen occurred Oct. 27th, 1825.   But the executor and executrix reversed the order prescribed ; they sold the homestead first, that is to say, in 1825, and the land in question in 1826.   As they were not endowed with the power to make " the first last and the last first," it is submitted that the whole proceeding was null and void.

III.  The invalidity of the deed of the 27th of April, 1826, (from Joseph and Margaret Seguine to Robert Seguine,) for

want of delivery distinctly appeared on the trial, from the testimony of Robert, and other proof.

IV. But was there a sale of this property, which the testator ordered in such positive terms ? An agreement for a sale is a contract executory, and an actual sale is a contract executed ; and to both there must be two parties, a vendor and a vendee, whose minds must meet. It is a settled rule of the common law that no man can be vendor and vendee in one and the same transaction, and that any attempt to effect a sale in that manner is null and void. (*The Buffalo Steam Engine Works* v. *The Sun Mutual Insurance Co.,* 17 *N. Y.* 401.) If this be the rule in the case of a power coupled with an interest, how much more must it obtain in the case of a naked power, where the estate or interest of third persons is to be affected. Lord Coke, in his commentaries on Littleton, after speaking of a power to sell, coupled with an interest vested in executors, and a naked power so vested, adds : "Yet in neither of those cases—albeit one refuse—can the other make sale to him that refused because he is party and privy to the last will, and remains executor still." (*See Co. Litt.* 113 *a.*) It is certain that Joseph, as executor, and Margaret, as executrix, could not have executed a deed conveying the premises directly to Joseph and Bornt. Could they do the same thing by a circuity ? Could they convey the premises even to a stranger by a deed of gift, or without consideration ? Before they executed any deed they were bound to make a contract of sale. This they did not do in this case. In considering the validity of the execution of one of these powers, the contract for a sale is more to be regarded than the deed consummating the same, although the latter be in due form. (*Harlan* v. *Brown,* 2 *Gill's Md. R.* 376.) The plaintiff not being a party to the transaction, is not estopped from showing the facts to avoid the deed. Being a married woman is another reason why there should be no estoppel. (*Learned* v. *Talmadge,* 26 *Barb.* 443.) It is certain that we have a right to make this question in a

court of law. (*The Buffalo Steam Engine Works* v. *The Sun Mutual Ins. Co.*, 17 *N. Y. Rep.* 401–4. *The Lessees of Swayze and Wife* v. *Burk*, 12 *Peters*, 11.) The defendant endeavors to help out the case by calling witnesses as to the value of the land in 1826. At this late day such evidence is utterly unreliable. No such inquiry can be entertained, either at law or in equity. It is excluded on principles of public policy, to obviate the danger of a perversion of the facts, and a consequent defeat of the ends of justice. This danger results from the nature of the inquiry. The response of a witness can be nothing but an opinion easily obtained, and worthless after the lapse of any considerable time. In *Devoue* v. *Fanning*, (2 *John. Ch. R.* 251–59,) Kent, Ch. says: "However innocent the purchaser may be in the given case, it is poisonous in its consequences." He quotes (*id.* 261) Lord Alvanley, in *Campbell* v. *Walker*, (5 *Ves.* 678. 13 *id.* 600,) thus: "It is impossible to know whether any advantage has been gained by the purchaser, or whether the trustee did all that he ought to have done." Also Lord Eldon, in *Ex parte Lacey*, (6 *Ves.* 625,) "When a trustee undertakes to manage for others, he undertakes not to manage for his own benefit." Again, "The ground of the rule is, that though you may see in a particular case that he has not made an advantage, it is impossible to examine in ninety-nine cases out of a hundred whether he made advantage or not." Also, the same Chancellor, in *Ex parte Bennett* (10 *Ves.* 385,) "It is settled that it is not requisite to show that the trustee has made any advantage by the purchase. If a trustee can buy in an honest case, he may in a case having that appearance, but from the infirmity of human testimony it may be grossly otherwise; and yet the power of the court would not be equal to detect the deception. Human infirmity will not permit a man to exert against himself that prudence which a vendor ought to exert in order to sell the estate most advantageously for the *cestuis que trust*, and which a purchaser is at liberty to exert for himself, in order

to purchase at the lowest price." Also, the opinion of Mr. Justice Benson in *Munro* v. *Allaire*, (2 *Caines' Cases in Error*, 183,) "Although it may, however, seem hard that the trustee should be the only person of all mankind who may not purchase, yet for very obvious consequences it is proper that the rule should be strictly preserved, and not in the least relaxed." These views are vigorously sustained and abundantly vindicated by Chancellor Kent (2 *John. Ch.* 254–271.) If such be the rule in chancery, where both the estate and the power is vested in a trustee, how much more should it obtain at law, where the court is dealing with a mere naked power, and the party committing the abuse is thereby seeking to divest the title of the heirs-at-law. The legislature of this state has distinctly recognized this principle by providing that a mortgagee may "fairly and in good faith" purchase premises advertised for sale under foreclosure, (3 *R. S.* 861,) but that a sheriff conducting a sale, under an execution, "shall not directly or indirectly purchase," and if he does, "such sale shall be void." (*Id.* 651.) The court below should, in place of dismissing the plaintiff's complaint, have submitted the case to the jury with the instruction, that as it appeared that Joseph Seguine, one of the vendors, was, through the medium of Robert, also one of the vendees, the deed in question was, and is, null and void.

*By the Court,* BROWN, J. This is an action of ejectment to recover the possession of an undivided seventh part of a lot of land in Westfield, Richmond county. It was tried before Mr. Justice SCRUGHAM and a jury, at the Richmond circuit, in November, 1861, when the complaint was dismissed and the plaintiff nonsuited. The plaintiff thereupon excepted, and the exception was ordered to be first heard at the general term.

The plaintiff claimed title as one of the children and heirs at law of John Seguine, who died seized of the premises in dispute on the 6th of October, 1813. He left a last will and

testament, bearing date September 4th, 1813, which was executed and published in due form of law to pass real estate, and therein appointed his brother, Joseph Seguine, his brother-in-law, George W. Barnes, and his wife, Margaret, the executors and executrix thereof. The will was proved before the surrogate, and letters testamentary were issued to Joseph Seguine and Margaret Seguine, who took upon themselves the execution thereof. George W. Barnes declined to accept the trust. The will contained this direction amongst others : First. "I order that so much of my estate shall be sold as shall be sufficient to discharge all my debts. I order and require that all my land, lying south of Woodrow, shall be sold as soon after my decease as possible, and when sold the proceeds shall be put out at interest, and the interest regularly paid unto my wife until my youngest child is eighteen years of age, provided my wife does not marry ;" at which time it was to be divided, with the proceeds of certain other lands, among his children, in the proportion of three parts to each of his sons, and two parts to each of his daughters. He gave his wife Margaret all his real and personal estate which was unsold, until his youngest child was eighteen years old, unless she should marry. The premises referred to in that part of the will quoted, as lying south of Woodrow, are those in dispute, and contain forty acres of land. The proof showed that efforts were made by Joseph Seguine, the executor, to sell the land, which were not effectual; Margaret, the widow, remaining in the possession and taking to her own use the profits thereof, from the time of the death of the testator until April 27th, 1826, at which time Joseph Seguine and Margaret, as such executor and executrix, by deed of that date, sold and conveyed the premises in fee to Robert Seguine, one of the testator's children. This deed describes the grantors as executor and executrix of the last will and testament of John Seguine, deceased; recites that he died seized of the premises granted, and refers to the power given to his executors in his will to sell, and de-

clares that the deed is made in execution of the will. The consideration is therein said to be $700. It was acknowledged on the day after its date, and was recorded on the 2d of May thereafter. Robert Seguine, by his deed, bearing date April 28th, 1826, conveyed the premises in fee to Bornt Seguine and the said Joseph Seguine. And on the same day Margaret, the widow, released to them her dower in the premises for the consideration of one dollar. Bornt Seguine, who was a brother of the testator, and Joseph Seguine, immediately entered into possession and so continued until the death of Bornt, who devised his interest to Joseph, who also remained in possession until his death, in 1849. He left a will, in which he devised the lands to Joseph Bennett, the defendant, who has been in the possession since that time. The proof also showed that the $700 consideration money, mentioned in the executors' deed, was credited to the estate of the testator and distributed amongst his sons and daughters in execution of the trusts of the will. There is amongst the exhibits a receipt from John Johnson, the husband of the plaintiff, Catharine, given to Joseph Seguine, the executor, in which he acknowledges to have received $363.28, in full of the legacy bequeathed to Catharine by the will of her father, except her share in certain moneys of the estate held by the widow, Margaret, for life, and a small sum held for the life of one Frederick Seguine. This receipt is dated June 19th, 1827. There is also a similar receipt signed both by John Johnson and Catharine G. Johnson, bearing date October 2d, 1849, for $173.34, given to Henry S. Seguine, executor &c. of Joseph Seguine, deceased, which is declared therein to be in full settlement of all claims against the estate of Joseph Seguine. The plaintiff, Catharine, was born in May, 1805. She married John Johnson, at what time does not appear, but before June 19th, 1827, the date of his receipt. He died December 19th, 1859. The widow, Margaret, never married again.

The effect of the two deeds—that from the executors to

Johnson *v.* Bennett.

Robert Seguine and that from him to Bornt and Joseph Seguine—is one of the principal questions in dispute. Did they have the effect to pass the title? That Robert Seguine does not recollect the transaction, and thinks he did not sign the latter deed, is of no value but to show the infirmity of his memory. There are the two instruments duly acknowlledged, and recorded thirty-six years ago, and there are the possessions under them for that period of time. Against such facts his want of recollection has no weight whatever. The theory of the plaintiff is that Joseph Seguine, the trustee, could not become the vendor and purchaser of the trust property at the same time. In one sense this is true. He could not in that way acquire a perfect title—a title indefeasable and absolute against all the world. But the real question is, whether he did not acquire such a title as carried with it the right to the possession—the right of property and its incidents—the right to hold and enjoy, and to transmit to others, so long as the title which he had was not vacated and set aside. The title at common law is good. It is not true that a sale and conveyance by a trustee, of the trust property, so that he becomes the purchaser himself, is void. Such a sale and conveyance is capable of confirmation by the express act of the *cestui que trust*, by acquiescence and lapse of time; and a title acquired by a subsequent purchaser, in good faith, and without notice of the subject conveyed, would be good beyond dispute. These consequences could in no case ensue if the sale and conveyance was absolutely void; because that which is void does not exist, and cannot be confirmed, nor become a connecting link in the chain of title. Sales and conveyances of this character are voidable only. They are voidable in the equity courts, at the instance of the *cestuis que trust* alone, not because they are fraudulent, or for inadequacy of price, but upon a rule of morality and policy, having reference to human infirmity, which forbids that a man should act as vendor for others and as purchaser for himself of the same subject matter, and at the same time.

The trustee may have acted from the best motives ; the sale may have been fairly conducted, and the price obtained full and ample, yet the courts will open and order a resale if the parties—the *cestuis que trust*—are not satisfied with it, and make their claim, and their bill is filed within a reasonable time. I quote from the opinion of the chancellor in *Davoue* v. *Fanning*, (2 *John. Ch.* 251,) a leading authority in our courts on the subject : "However innocent the purchaser may be in the given case, it is poisonous in its consequences. The *cestui que trust* is not bound to prove, nor is the court bound to judge, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. There may be fraud, as Lord Hardwicke observed, and the party not able to prove it. It is to guard against the uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come at his own option, and without showing actual injury, and insist upon having the experiment of another sale." In *Campbell* v. *Walker*, (5 *Vesey*, 678 ; 13 *id.* 600,) Lord Alvanly, then master of the rolls, declared the rule necessarily existed to this extent. That was a devise of real estate to trustees to sell. They sold at auction, and bought in a part for themselves at a fair price. There was no proof that the sale was at an under value, or that the sale was not bona fide and regular. The bill was filed in behalf of residuary legatees, then infants, to have the sale set aside and the lands resold. It was accordingly so decreed, and the master of the rolls said the rule did go to the extent that the *cestui que trust* had a right to set aside the purchase and have the estate resold, if he chose to say in a reasonable time, that he was not satisfied with it. The trustee purchases subject to that equity. He buys with that clog." In making a decree vacating a sale of this kind, the court will make it upon terms, in regard to purchase money already paid, and perhaps distributed, in execution of the trusts, so as to insure

justice and equity to all concerned.   In the present case the
proof shows that the plaintiff and her husband have accepted
their share of the proceeds of the sale, and, if the rule claim-
ed by her counsel be affirmed, that the sale is absolutely
void, she may take her share of the lands in addition.   This
cannot be.   The learned counsel for the defendant has shown
by a reference to a multitude of cases, that the grounds upon
which the equity courts interfere between *cestuis que trust*
and trustees and their grantees with notice, affirm the valid-
ity and force of the title at law.   Otherwise the chancery
courts would have no jurisdiction.   He has exhausted the
subject, and left nothing to be added to what his·elaborate
brief contains.   I therefore conclude that the plaintiff cannot
maintain this action to recover the possession of the lands.

I refer briefly to another consideration which is fatal to
the claim of the plaintiff.   The direction to the executors
was to sell the land, convert it into money, put it at interest
until the youngest child became eighteen years of age, and
then distribute it amongst his children in the proportions
named.   Upon the principle of the case of *Kane* v. *Gott,*
(24 *Wend.* 641,) and the authorities there referred to, the
estate became impressed with the nature of personal prop-
erty, and was to be distributed as such.   It presents a case
of equitable conversion.   I extract from the opinion of the
court : " On the principle that equity considers that as done
which ought to have been done, it has been long established
that money directed to be employed in the purchase of land,
and land directed to be sold and turned into money, are to
be considered as that species of property into which they are
to be converted, and this in whatever manner the direction
is given, whether by will or by contract, &c.   It follows,
therefore, that every person claiming property under an in-
strument directing its conversion, must take it in the char-
acter which that instrument has impressed upon it."   Quoting
*Jarman's edition of Powell on Devises;* so, "where execu-
tors are clothed with a trust to sell the real estate for money,

and appropriate the avails to the uses of the will in the form of personal property, no doubt was ever entertained that it must be considered, in equity, the same as if the testator himself sold the land and then bequeathed the consideration money." Referring to 2 *Powell*, 64. *Leigh & Dalzell on Eq. Con.* 48. The will of John Seguine was made, he died, and the lands under the power were converted into money long before the statutes concerning the rights of property of married women were enacted. The plaintiff, Catharine G. Johnson's share of the proceeds of the property lying south of Woodrow, and referred to in the will, became the property of her husband, John Johnson, by virtue of his marital rights, if he chose to reduce it to his possession during life. It was in every sense personal property; and, like all other personal property and choses in action of the wife, the husband might take it to his own use, sue for it in his own name, release it or assign it over to another person, and vest the assignee with the right of property in it. We have already seen that John Johnson, the husband, accepted his wife's (the plaintiff's) share of the proceeds of the lands, and gave his receipt therefor. He thereby extinguished all claim which he had upon them as her husband, as he certainly did all claim she could possibly have upon the lands of which they were the proceeds.

The facts upon which the rights of the parties depend were not put in dispute upon the trial, by conflicting evidence, and there was nothing for the jury to pass upon.

Judgment should be entered for the defendant upon the nonsuit.

The case of *Ann Journeay* v. *Joseph Bennett*, involving the same questions, and depending upon the same evidence and in which a similar decision was made at the same circuit, should be disposed of in the same way, and judgment of nonsuit entered therein for the defendant.

[KINGS GENERAL TERM, February 9, 1863. *Brown, Scrugham* and *Lott*, Justices.]