(15 Misc. Rep. 580.)
### GREGAN v. BUCHANAN et al.

(Supreme Court, Special Term, New York County. January, 1896.)

1. TRUSTS—RIGHTS OF CESTUI QUE TRUST—WAIVER.
   The right of a cestui que trust to avoid the purchase of trust property by the trustee for his own benefit is lost where it was not asserted until 20 years after the purchase, and the trustee was not guilty of actual fraud.

2. ADVERSE POSSESSION—RUNNING OF STATUTE.
   Where adverse possession has been taken, and the owner dies, leaving an infant heir, the disability of infancy does not interrupt the running of the statute regulating the acquirement of title by adverse possession.

Action by Charlotte W. Gregan, an infant, by guardian ad litem, against Charles J. Buchanan and another, as executors. Judgment for defendants.

N. A. Lawlor, for plaintiff.
Daniel Seymour, for defendants.

BEACH, J.   In cases involving the acts of persons long dead, it is well for the court to primarily consider the evidence, with the intent of deducing therefrom the relation of such parties in their lifetime, and the facts and circumstances surrounding the transactions between them, for the purpose of more clearly understanding and appreciating their actions.   While this course may not of itself enable the court to render judgment, it still serves to throw light upon the subject-matter involved, and so guides to correct conclusions.

The action is brought to set aside certain conveyances of realty, both fee and leasehold, situate on the northwesterly corner of Forty-Second street and Seventh avenue, in this city.   Prior to the year 1868 the title was in Thomas Gregan, who died intestate and insolvent on January 4, 1868, leaving, him surviving, a widow and one son, Edward T. Gregan.   The defendant's testator, John McB. Davidson, was appointed and qualified as administrator of his estate, and as guardian of the person and estate of the son, in January of same year.   At the decease of Thomas Gregan, the premises held by him in fee were incumbered by mortgages assumed and executed by him, with taxes and more or less interest moneys overdue and unpaid. On March 26, 1867, in Gregan's lifetime, The Albany City Fire Insurance Company brought suit to foreclose a mortgage held by it on the easterly 50 feet of the premises held in fee, the payment whereof was guarantied by John McB. Davidson, and Gregan was personally served with process.   In course of regular judicial proceeding, the premises were sold under judgment of foreclosure at public auction on February 7, 1868, to Henry D. Felter, who took title thereto by referee's deed on March 30, 1868.   The said Felter and wife, by deed dated March 31, 1868, conveyed said premises to John McB. Davidson. In April, 1868, after Gregan's death, James Munson brought suit, against those interested, to foreclose a purchase-money mortgage executed by Gregan, resting on the westerly 19 feet of the premises held in fee.   Under a judgment of foreclosure, regularly rendered and entered in the action, the premises were sold at public auction

in July, 1868, by a referee, to John H. White, to whom a deed was given dated August 13, 1868. On November 16, 1868, John H. White conveyed the premises to John McB. Davidson. In August, 1869, Davidson, as administrator of Gregan, filed his petition in this court, praying a sale of the leasehold premises at public auction, alleging therein facts warranting such relief. An order thereon was entered September 15, 1869, directing a sale thereof by a referee appointed, which sale was had October 18, 1869, when the premises were sold to John H. White. The referee's report was thereafter confirmed by this court. In March, 1870, upon petition to the surrogate's court by said Davidson, as administrator asking leave to settle an action affecting said premises then pending in the superior court, and praying an approval of the sale of the leasehold, such proceedings were had that on March 28, 1870, an order was made by said surrogate's court approving the settlement of the action and the sale. By assignment dated December 30, 1869, the referee on the sale and Davidson, as administrator, assigned and set over the lease of said premises to John H. White, who by deed dated April 16, 1874, conveyed the said lease to Davidson. The conveyances to Davidson above recited, and the proceedings producing them, are attacked by plaintiff, and their annulment and an accounting prayed, upon the grounds of actual fraud and conspiracy by and through which Davidson's title was acquired, and also that he, then being a trustee, was thereby prohibited from taking the title, and the conveyances are void for that reason. The plaintiff in this action is the only child of Edward T. Gregan, the only son of Thomas Gregan. He died in the city of New York, January 11, 1877, leaving a widow and the plaintiff him surviving. He was insolvent.

It may be advisable to here refer to the facts proven in the record tending to show the relationship which would seem to have existed between Thomas Gregan and John McB. Davidson when the former held the title to and possession of the premises. On May 24, 1867, after the foreclosure suit was brought by the Albany City Fire Insurance Company against Thomas Gregan and others, Thomas Gregan conveyed the premises in fee to Davidson, and a collateral agreement was executed between them. This deed was recorded June 7, 1867. On May 24, 1867, Thomas Gregan also executed and delivered to Davidson his bond and a mortgage upon the leasehold for $10,000, which was recorded June 7, 1867. The collateral agreement in substance provided that the deed of the premises held in fee, the bond and mortgage on leasehold for $10,000, and a certain chattel mortgage for $5,000, given by Gregan to Davidson, were all given as collateral security for indorsements made by Davidson, at Gregan's request, of certain promissory notes made by Gregan, payable at Union National Bank of Albany. It appears that Thomas Gregan never paid any of said notes. In 1875 Davidson accounted as administrator of Thomas Gregan, in the surrogate's court; and by the decree rendered and entered May 25, 1875, Davidson is shown to have then been a creditor of Gregan for a principal sum of over $50,000, and a holder of judgments obtained against Thomas Gregan, and assigned to Davidson, in the former's lifetime, amounting to over $7,000. It

is clearly inferable from these facts that the relations between Davidson and Gregan were friendly,—the former possessed of financial means, the latter financially embarrassed, and Davidson aiding him by loans of large amounts of money. This relationship and assistance must have existed for some years before Thomas Gregan's death, January 4, 1868. The estate of Gregan was insolvent, and I am of opinion that Davidson, in acquiring title to the realty, was moved only by the desire to obtain, after lapse of more or less time, payment, in part at least, of Gregan's large indebtedness to him. These facts and deductions militate strongly against averments charging actual fraud and conspiracy with others to defraud the widow and son of the man whom he had long befriended.

I do not find in the record any proof of fraud practiced by Davidson in the course of the foreclosure suits and the proceedings for sale of the leasehold. In the latter the allowances were excessive, but the court had power to make them, and their grants do not in any degree tend to establish actual fraud. The court had undoubted jurisdiction in the proceedings, and, although counsel for plaintiff declares the orders to be void, he fails to support the assertion by giving specific reasons in fact, or citing authorities to support the contention. There is no evidence in the case to show but what the properties on public judicial sales brought their full value. On the part of defendants, the evidence of Harnett supports the conclusion that all they were then worth was realized. It seems undisputed and indisputable that Thomas Gregan, at his death, was insolvent. The counsel for plaintiff fervently depicts the position of the ward, Edward T. Gregan. From the testimony, the position of Davidson seems to have been one of difficulty. He was the administrator of an insolvent's estate, himself the holder of large claims, and under large liabilities as guarantor of the bond and mortgage held by the insurance company in process of foreclosure, as indorser of the series of notes covered by the collateral agreement, and holder by assignment of judgments recovered against the intestate in his lifetime, amounting to about $7,000. · There is no proof of payment directly by Davidson of any part of the bids on foreclosure sales of the premises held in fee, except an entry in an attorney's register that a balance of the purchase money of the westerly 19 feet was paid by Davidson's checks. For the sake of brevity in the consideration of legal questions raised by the proofs, it may be well to suppose that the bids at the two foreclosure sales of the 69 feet were paid with money furnished by the administrator Davidson, who thereafter took the title.

The primary inquiry is whether the conveyances to him were void or voidable by his ward, Edward T. Gregan, after becoming of age. The rule is definitely fixed. Purchase made by a trustee of trust property, for his own interest, is not void ab initio, but voidable at the election of the cestui que trust. Dodge v. Stephens, 94 N. Y. 209; Munson v. Railroad Co., 103 N. Y. 58, 8 N. E. 355; Barr v. Railroad Co., 125 N. Y. 263, 36 N. E. 145. While such purchase is so voidable, the liability to such result does not rest indefinitely upon the trustee. It may cease from acquiescence, lapse of time,

or express act of the cestui que trust.   Johnson v. Bennett, 39 Barb. 237;   Kahn v. Chapin, 84 Hun, 541, 32 N. Y. Supp. 859;  Harrington v. Bank, 101 N. Y. 257, 4 N. E. 346.   For an application of these principles, it is needful to briefly consider some facts clearly appearing by the proof.   Davidson acquired title to and possession of the premises held in fee in the year 1868, and to the leasehold in 1869.   It is conclusively established that the parents of Edward T. Gregan were married in this state August 13, 1849, and that he was baptized in the same parish on or about May 15, 1850;  that in the formal paper of his enlistment in the militia of this state, verified by his signature and oath, in June, 1870, he gave his age as 21 years. He was married in this city April 7, 1872, and then certified his age as 22 years.   The entry in his family Bible, made by himself, shown since to have been changed, stated the date of his birth as May 12, 1850.   He therefore became of age May 12, 1871.   He died January 11, 1877.   The record fails to show any action whatever by him in the way of exercising his right to avoid the title during the five years between his majority and death.   On the contrary, it appears that by deed dated April 15, 1872, and delivered three days thereafter, Edward T. Gregan, the cestui que trust, conveyed to Davidson all his right, title, and interest to the premises held in fee.   It is true Davidson had not then accounted as guardian, but there is lack of proof that the conveyance was procured by any fraudulent act or misrepresentation.   Gregan was then about 22 years old, and to his death, over 4 years thereafter, never questioned the validity of the grant.   In the absence of fraud, this conveyance is unassailable.

The counsel for plaintiff argues that the trust relation of guardian and ward was subsisting, Davidson not having accounted as guardian.   The contention, in my opinion, is not tenable, but, if so, the deed was not questioned by the grantor to the time of his death, nearly five years after its execution and delivery.   He was bound, if the fiduciary relation did exist, to disaffirm within a reasonable time, and the period between its execution and his death, I think, should be so held.   "In all cases where actual fraud is not made out, but the imputation rests upon conjecture, after the seal of death has closed the lips of those whose character is assailed, and lapse of time has impaired the recollection of transactions and obscured their details, the welfare of society demands the rigid enforcement of the rule of diligence in prosecuting whatever remedy may ever have existed in favor of the person interested."   Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. 418;  Johnson v. Bennett, 39 Barb. 237; other authorities cited above;  and Beardsley v. Hotchkiss, 96 N. Y. 201.   The title to the fee was thus given, validated, and confirmed.

It is also shown that in March, 1875, Davidson, as administrator, filed his petition for final accounting as such with the surrogate's court of this county;  that citations issued and were personally served on those interested, and on Edward T. Gregan, March 4, 1875, returnable March 22, 1875.   Such accounting was regularly had, and a decree entered passing and allowing the accounts May 25, 1875.   It is too late now, after the lapse of 20 years, to impeach

its force and validity by questioning the items of the account or showing errors therein, which, if allowed, would not have prevented the result or in any way affect the position of one in whose behalf the objections are raised.     The account filed by the administrator included proceeds of sale of the leasehold, had under the order of this court, which sale was approved by the surrogate's court.     On March 29, 1875, some weeks after service upon him of the citation and subsequent to the return day, Edward T. Gregan executed and delivered to Davidson, under his hand and seal, a general release, and especially discharged Davidson from all claims and demands which he°then had or might be entitled to against Davidson individually or as administrator or as guardian.     The case of Bolton v. Gardner, 3 Paige, 273, involved a question of pleading;  the learned chancellor stating the rule that, as to a release from a cestui que trust to his trustee, the trustee must show that the parties dealt at arm's length, the cestui que trust having full information.     I think that requirement is met by the fact that, at execution of the instrument, Edward T. Gregan had passed his majority four years before. The administrator had then filed his accounts, and Gregan had been personally cited to appear, and the return day had passed.     These facts constitute a dealing at arm's length.     There are no limitations by recital in the release, but an extension of the general terms, as between the individual parties, to matters between them existing from Davidson having been administrator and guardian.     Being unimpeached by any proof of fraud in its procurement, it stands as a full answer to any attack upon the sale of the leasehold premises.     Kirchner v. Machine Co., 135 N. Y. 182, 31 N. E. 1104.

The proceedings for the sale of this plaintiff's interest in said premises were based on the petition of her mother and herself, verified October 25, 1890.     This document is most full in way of particular statement, setting forth, upon information and belief, that the infant was owner and seised in fee of, or had an interest in, the premises.     The court was placed in full possession of all the facts, and under them it was in no sense a fictitious sale, or resorted to merely for the purpose of divesting the infant of title, and placing it in some other person.     I do not think the proceeding is void under the case of Weinstock v. Levison (Sup.) 14 N. Y. Supp. 64.     The sale there was fictitious;  the court not advised of the facts or purpose of the proceeding, which was resorted to with the sole design of divesting the infant of title. .  In the proceeding here involved, it is stated to be for the infant's benefit;  her claimed title or interest set forth; so that the court was fully informed.     It cannot be possible for her to assail it because of her want of title or interest in this action, which is brought to establish the same title or interest alleged in her petition.     I think she is bound by the result.     Dodge v. Stevens, 105 N. Y. 589, 12 N. E. 759.

In view of the conclusions reached upon other questions, further discussion is needless, but it may be well to consider briefly the question of adverse possession.     By the deeds from Felter and wife, Davidson acquired title to the premises in fee in 1868.     He and the defendants have since then been in open and notorious posses-

sion, receiving the rents, issues, and profits, and making improvements. There is no fraud shown in the foreclosure proceedings or the procurement of these conveyances. The deed from Edward T. Gregan to Davidson was executed and delivered April 15, 1872, and he became of age about May 12, 1871. The statute began to run in May, 1871, and the title assured in May, 1891. This action was brought in November, 1893, over 2 years beyond the 20 years succeeding Gregan's majority. It is true that he died January 11, 1877, leaving plaintiff his only heir at law, she being then, and to the bringing of this action, under the disability of infancy. This disability did not interrupt the running of the statute, it having began in the lifetime of her father. Fleming v. Griswold, 3 Hill, 85. Were this otherwise, it is plain that successive disabilities might render the statute ineffective.

A decree is ordered for the defendants, with costs.