OPINION OF THE COURT
Samuel G. Fredman, J.
*886 There is before me for consideration at this time the petitioners’ application, brought on by order to show cause dated August 27, 1996, seeking the entry of an order pursuant to CPLR article 78, restraining the respondent New York State Board of Elections (hereinafter Board) from conducting a primary election for the Conservative Party on September 10, 1996 for the public office of Member of the House of Representatives, 19th Congressional District, and declaring that the petitioner DioGuardi is the designated and nominated candidate of the petitioner Conservative Party (hereinafter Party). There was also subsequently presented to me the cross motion of the respondent Kelly requesting the dismissal of the petition on the several grounds addressed herein, as well as the answer to the petition of the respondent Board including two affirmative defenses, both of which will likewise be taken up in this decision.
Oral argument was held before the court on the return date, September 3, 1996, and decision reserved at the completion of the presentation of the issues by attorneys representing all parties.
During the course of the oral presentations, it became clear to this court, not seriously challenged by the litigants, that there are no issues of fact which require judicial determination in order to reach a decision on the merits. Therefore, the court has turned to the resolution of the issues of law as outlined in the respective papers before me and as forcefully argued by counsel within the framework of its knowledge that the primary election which brings the parties to court is scheduled less than one week from this date.
This court is faced with deciding what appears to be the rather novel question of whether it has the right to remove from the Conservative Party primary election ballot in the 19th Congressional District the name of a candidate who is concededly not a member of that Party and who has not received the designation of that Party to run for such office pursuant to authorization under the specific statute enacted by the Legislature of this State for such purpose to permit such candidacy.
What would otherwise appear to be a clear mandate (pursuant to NY Const, art I, § 1) denying such candidate the right to run in a primary election on the ground that no contest for such nomination exists as prescribed by law, is skillfully attacked by that candidate as beyond my jurisdiction because of a procedural defect, namely, the failure to have acted within *887 the statutory period provided for in section 16-102 (2) of the Election Law which requires the commencement of a proceeding to remove a candidate from the ballot within 14 days after the last day to file the nominating petition. Although there is some apparent confusion with regard to what that date actually is, based on the Board’s position that it was entitled to apply the presumption of validity as its rationale for accepting Kelly’s petitions And assigning the date of that acceptance as the date from which the 14 days began to run, this court believes it need not rule on any question as to that date because the principal case which is advanced by Kelly in support of her thesis is distinguishable and does not appear to this court to be controlling in view of the specific fact situation in the matter before me.
Kelly cites as absolutely controlling the case of Matter of Scaringe v Ackerman (119 AD2d 327, affd 68 NY2d 885), in which matter the opinion of Justice Casey of the Appellate Division, Third Department, was adopted and affirmed without other now applicable comment by a 6-0 vote of the Court of Appeals adding only a caveat that its decision did not preclude a future challenge to the qualifications of the candidate (there, Ackerman, here, Kelly) in the "appropriate forum” (there, the New York State Assembly, here, the House of Representatives). (Matter of Scaringe v Ackerman, 68 NY2d, supra, at 886.) If Scaringe stands for the proposition, as advanced by Kelly, that any proceeding to remove a candidate for public office from the ballot must be brought under Election Law § 16-102, thus raising an issue as to whether this proceeding was in fact brought within said statute’s time proscriptions, it would be necessary for the court to inquire into and resolve a number of questions dealing with the actions of all of the parties to this litigation at and during the disputed time period when they all participated, or failed to participate, in the process which eventually brought this case to this court.
I do not find such precedent, however, to be controlling in the instant proceeding, and believe it distinguishable for the reasons set forth below. Scaringe (supra) not only related to a general election as distinguished from the primary election which is the subject of this contretemps, so that there is not in this case an appropriate forum "at which the matter could eventually be resolved”, but it also did not involve the so-called Wilson-Pakula Law (section 6-120 of the Election Law) which is the specific procedure by which potential candidates for political office who are not members of the political party under *888 whose aegis they seek to run may receive an authorization from that party to vie for office under its banner, which procedure DioGuardi followed in his quest for the Conservative Party nomination for that office (the fact is that Kelly herself sought such Wilson-Pakula status and filed petitions supporting that effort, but was overwhelmingly defeated at the Party meeting at which DioGuardi received that authorization, which must also be taken into consideration, having participated in the procedure pursuant to which DioGuardi became the beneficiary of the Conservative Party authorization). The Conservative Party is entitled, by statutory fiat and otherwise, to choose its candidates in the fashion it directs, subject only to the proper legal process, which it followed herein. To deny it the privilege of adhering to the very procedures which the law requires, which is the effect of what the Board so obviously did, and then seeking to argue that no court has the right to oversee such action, as appears to be the respondents’ argument here, is mere casuistry which must be rejected.
Petitioners also argue that the decision in Scaringe (supra) is distinguishable from the case at bar, because Scaringe, unlike the present situation, involved an intraparty fight, and because there were valid designating petitions filed by DioGuardi in this matter. Petitioners’ first contention is unconvincing, but the second is well taken. The Wilson-Pakula issue which is the crux of the present litigation was not raised in or relevant to the Court of Appeals determination in Scaringe.
Even assuming, arguendo, that Scaringe (supra) is not distinguishable factually on this basis, both the Court of Appeals and the Appellate Division, Third Department, which Court’s opinion, as already noted, the Court of Appeals affirmed for the reasons stated therein, ruled as they did, since they viewed that proceeding as one to challenge the sufficiency of a candidate’s designating petition although the petitioners had argued that the issue raised concerned said individual’s substantive qualifications which allegedly removed that matter from the coverage of the Election Law. In the present situation, petitioners aver that Kelly’s designating petition is of no legal effect, essentially being void ab initio, based upon the plain meaning of Election Law § 6-120 (3), the governing statute. Kelly does not assert that she is a member of the Conservative Party and, for all practical purposes, admits that she is a registered Republican. This court declines, given the mandate of Election Law § 6-120 (3), to permit any individual to file a designating petition, as Kelly did, and then have this effort withstand such statutory and judicial scrutiny.
*889 This court has concluded that Kelly’s designating petition is of no legal effect, so that the within proceeding is not properly viewed as a challenge to said designating petition’s sufficiency, within the meaning of the Scaringe holding. Accordingly, it follows that respondents’ reliance upon the Statute of Limitations is misplaced, since there is no statutory time frame within which to challenge a petition that lacks any cognizable existence under the Election Law.
This court is, of course, well aware of the limits of its jurisdiction. It is similarly cognizant of the fact that it does not sit as a court of equity in this matter, that it has a responsibility to be aware of precedent and follow it, and that the Election Law of this State, although often a cumbersome and highly technical amalgam of legislative and judicial pronouncements, must control all cases which rightfully proceed under its imprimatur. To the best of my knowledge, that does not mean, however, that there is any reason why an article 78 proceeding, properly commenced to test an administrative act, such as in the instant case, in which the body charged with performance has accepted a document which is itself void ab initio, should not be sustained.