# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Bank of America National Ass'n v. Bassman FBT, L.L.C., 2012 IL App (2d) 110729**

---

| | |
|---|---|
| Appellate Court Caption | BANK OF AMERICA NATIONAL ASSOCIATION, Successor by Merger to LaSalle Bank National Association (f/k/a LaSalle National Bank), as Trustee for the Registered Certificateholders of Morgan Stanley Capital I, Inc., Commercial Mortgage Pass-Through Certificates, Series 1988-HF2, Plaintiff and Counterdefendant-Appellee, v. BASSMAN FBT, L.L.C., and MAXIMUM MANAGEMENT, LLC, Defendants and Counterplaintiffs and Third-Party Plaintiffs-Appellants (Unknown Owners, Defendants; Berkadia Commercial Mortgage, LLC, Third-Party Defendant). |
| District & No. | Second District<br>Docket No. 2-11-0729 |
| Filed<br><br>Supplemental opinion filed upon denial of rehearing | June 18, 2012<br><br><br><br>December 7, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment for plaintiff in mortgage foreclosure and sale was upheld where the trial court properly determined that plaintiff had standing as a successor by merger and as trustee for registered certificate holders to foreclose certain mortgages and defendants lacked standing to raise a purported breach of contract committed by plaintiff that allegedly limited plaintiff's right to foreclose. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-CH-2806; the Hon. Bonnie M. Wheaton, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Kenneth J. Ashman and Neal D. Kitterlin, both of Ashman Law Offices, LLC, of Chicago, for appellants. |
| | David G. Lynch, of DLA Piper LLP, of Chicago, for appellee. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. Justices Hutchinson and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1                                    I. INTRODUCTION

¶ 2        Defendants (Bassman FBT, L.L.C. (Bassman), and Maximum Management, LLC) appeal a grant of a summary judgment of foreclosure and sale by the circuit court of Du Page County in favor of plaintiff (Bank of America National Association, successor by merger to LaSalle Bank National Association, as trustee for the registered certificateholders of Morgan Stanley Capital I, Inc., commercial mortgage pass-through certificates, series 1998-HF2). Defendants raise two main arguments on appeal. First, they contest the trial court's determination that plaintiff had standing to foreclose certain mortgages. Second, they assert that summary judgment is inappropriate in light of a purported breach of contract committed by plaintiff. Plaintiff responds that defendants lack standing to advance these arguments. For the reasons that follow, we agree with plaintiff and affirm. All outstanding motions are denied as moot.

¶ 3        As this appeal comes to us following a grant of summary judgment, we conduct *de novo* review. *Kociscak v. Kelly*, 2011 IL App (1st) 102811, ¶ 23. This means that we owe no deference to the trial court (*Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 595 (2011)) and may freely disregard its judgment and substitute our own (*People v. Pineda*, 373 Ill. App. 3d 113, 116 (2007)). Summary judgment should be granted only if the moving party's right to prevail is "clear and free from doubt." (Internal quotation marks omitted.) *Kociscak*, 2011 IL App (1st) 102811, ¶ 23. A grant of summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). A "material fact" is one that might affect the outcome of a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, a court must construe the record strictly against the movant and liberally in favor of the opposing party. *Hunt v. Farmers Insurance Exchange*, 357 Ill. App. 3d 1076, 1077 (2005). All reasonable inferences are to

be drawn in favor of the opponent of the motion. *Eakins v. New England Mutual Life Insurance Co.*, 130 Ill. App. 3d 65, 68 (1984).

¶ 4        Construing the record in defendants' favor, we will accept the following factual propositions and inferences for the purpose of resolving this appeal. Defendant Bassman executed two mortgages in favor of Heller Financial, Inc., for property known as the Glen Corporate Center in Glen Ellyn. Plaintiff foreclosed on these mortgages in the action below. Plaintiff's authority to foreclose on them was derived from a document referred to as the pooling and services agreement (PSA). The PSA created a trust, naming plaintiff's predecessor as trustee. It further stated that "Depositor–Morgan Stanley Capital I, Inc.–'will acquire certain Mortgage Loans form Heller Capital Funding, Inc., as seller *** and the Depositor will be the owner of the Mortgage Loans.' " The depositor is then to convey the mortgages to the trust. The mortgages executed by Bassman were conveyed from Heller Financial, Inc., to Heller Capital Management, Inc., and then to the trust. Heller Financial, Inc., Heller Capital Management, Inc., and Heller Capital Funding, Inc., are separate entities. Thus, neither Morgan Stanley Capital I, Inc., nor Heller Capital Funding, Inc., was involved in the transfer of the mortgages to the trust administered by plaintiff, which, we will assume for the purpose of resolving this appeal, is contrary to the manner set forth in the PSA. Defendants point out that the PSA also states that the trustee "is not permitted to 'accept any contribution of assets to the Trust not specifically contemplated by [the PSA], unless the Trustee shall have received any Nondisqualification Opinion at the expense of the Person desiring to contribute such assets with respect to such contribution.' " Defendants note that there is no evidence that plaintiff received any such opinion.

¶ 5        Pertinent to the second issue in this appeal, defendants state that third-party defendant Berkadia Commercial Mortgage, LLC (Berkadia), is the servicer of the mortgages at issue in this case. As such, it is a party to the PSA. Its duties include dealing with loans that are in default. The PSA instructs Berkadia to take corrective action in such circumstances and specifies four ways in which such situations can be resolved: the loan can be paid current; the loan can be paid in full; there can be an agreed modification; or a foreclosure can be initiated. The PSA states that a foreclosure should be pursued only where Berkadia has "determined in its 'reasonable and good faith judgment' that 'corrective action has been unsuccessful' and that 'no satisfactory arrangement can be made for the collection of delinquent payments and no other alternative' can be negotiated."

¶ 6        After a drop in occupancy of the Glen Corporate Center, Bassman sought to restructure its debt to plaintiff. Berkadia informed Bassman that it would not engage in discussion unless payments were three months in arrears. Bassman stopped making payments, in reliance on this advice. Bassman and Berkadia entered preliminary negotiations. A representative of Berkadia (Bolen) visited the property. Bolen sent a follow-up letter requesting additional documents and $164,771.11. Bassman promised to provide everything Berkadia had requested and sent a check for $37,314.63 to cover real estate taxes. Bassman also stated that it was willing to pay the full amount requested by Berkadia, but was concerned as to what funds would be available to maintain the property if the full amount were paid to Berkadia. It expressed these concerns to Berkadia. Berkadia did not respond. Shortly thereafter, this lawsuit was initiated. The trial court granted a summary judgment of foreclosure and sale.

This appeal followed.

¶ 7        Before turning to the merits, we must address a threshold issue. The parties disagree as to whether Illinois or New York law controls this case. Neither party, however, provides significant analysis of this issue. Defendants simply state that New York law is "the governing law for the PSA under its own choice of law provisions." Unhelpfully, as the PSA exceeds 100 pages, defendants fail to provide a citation to this provision. Plaintiff replies only that it does not agree with defendants and that the pertinent laws of the two states are not materially different. In their reply brief, defendants acknowledge that Illinois law controls generally; however, defendants maintain that New York law determines whether the mortgages were validly transferred to the trust.

¶ 8        Regarding the choice-of-law provision in the PSA, under Illinois law an entity that is not a party to a contract cannot typically invoke a choice-of-law provision contained in the contract. *Jakubik v. Jakubik*, 208 Ill. App. 3d 119, 122 (1991). Under the law of New York, a third-party beneficiary,[1] an alter ego of a signatory, a successor in interest, or an entity that owns or is owned by the signatory may invoke such a provision even though not a party to the contract. *Sealord Marine Co. v. American Bureau of Shipping*, 220 F. Supp. 2d 260, 270 (S.D.N.Y. 2002). Defendants do not appear to fit into any of these categories.

¶ 9        Hence, defendants could not invoke the choice-of-law provision of the PSA even if they so desired. Instead, we will look to Illinois's choice-of-law rules to determine which state's law controls. See *Yessenow v. Executive Risk Indemnity, Inc.*, 2011 IL App (1st) 102920, ¶ 14 (holding that, in the absence of an effective choice-of-law agreement, the choice-of-law rules of the forum state control). Illinois courts employ the Restatement (Second) of Conflict of Laws (Restatement) to resolve choice-of-law questions. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 568 (2000). Generally, the object is to apply the law of the state with the most significant relationship to the issue. *Gregory v. Beazer East*, 384 Ill. App. 3d 178, 196-97 (2008). Here, two entities (Bassman and Heller Financial, Inc.) that conduct business in this state entered into mortgages secured by property in this state. The only relationship to New York is the PSA, to which Bassman lacks privity. The mortgages themselves contain choice-of-law provisions indicating that Illinois law will govern the relationship between the parties, and we are aware of no reason why this provision would not control. *Freeman v. Williamson*, 383 Ill. App. 3d 933, 938 (2008). Thus, to the extent the law of New York differs from ours, we will apply Illinois law generally.

¶ 10        As for which state's law should be used to assess the validity of the transfer of the mortgages into the trust administered by plaintiff, we agree with defendants. The contract for this purported transaction included a choice-of-law provision that specified that New York law governs the trust. Courts "should give effect to a choice-of-law provision in a contract [citation] unless the contract chooses a foreign law that is ' "dangerous, inconvenient, immoral, [or] contrary to the public policy of the local government" ' [citation]." *Khan*, 408 Ill. App. 3d at 581; see also *Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376

---

[1]Defendants later argue that they are third-party beneficiaries, and we will explain why they are not when we come to that argument.

-4-

Ill. App. 3d 411, 421-22 (2007); *cf.* Restatement (Second) of Conflict of Laws § 190 (1971) ("The contractual duties imposed upon the parties to a deed of transfer of an interest in land are determined, *in the absence of an effective choice of law by the parties*, by the local law of the state where the land is situated." (Emphasis added.)); Restatement (Second) of Conflict of Laws § 195 (1971) ("The validity of a contract for the repayment of money lent and the rights created thereby are determined, *in the absence of an effective choice of law by the parties*, by the local law of the state where the contract requires that repayment be made." (Emphasis added.)). We are aware of no aspect of the pertinent law of New York that could be characterized as inconvenient, dangerous, immoral, or contrary to the public policy of Illinois. *Khan*, 408 Ill. App. 3d at 581. Thus, to the extent the laws of Illinois and New York conflict on this issue, we will apply New York law to determine whether the mortgages were validly transferred to the trust.

¶ 11    We are cognizant that we have already concluded that defendants are not entitled to rely on the PSA's choice-of-law provision; however, we do not view the application of New York law under these circumstances as an invocation by defendants. Quite simply, plaintiff was a party to a transaction that took place under and contained a choice-of-law provision expressly contemplating the application of New York law. At oral argument, plaintiff suggested that the purportedly significant contacts between the transaction and this state should trump the parties' choice of law in the PSA. This is not the law. See *Westchester Fire Insurance Co. v. G. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 628 (2000) (holding that choice-of-law principles control only in the absence of an effective choice-of-law provision). Indeed, giving effect to a choice-of-law provision only when it is consistent with choice-of-law rules would render such provisions ineffective, since they would apply only when (in this state) the most-significant-relationship test already selected the law of the jurisdiction chosen in the choice-of-law provision. Put differently, choice-of-law provisions exist to negate choice-of-law rules. In any event, by participating in transactions under the PSA, it is plaintiff's actions, rather than defendants', that make New York law applicable to this issue. We now turn to the issues raised by the parties.

¶ 12                                    II. STANDING

¶ 13    To have standing, a party must have suffered an injury to a legally cognizable interest. *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill. App. 3d 923, 929 (1997). A litigant must assert his or her own legal rights rather than the rights of a third party. *Helmig v. John F. Kennedy Community Consolidated School District No. 129*, 241 Ill. App. 3d 653, 658 (1993). Courts require that litigants have standing in order to preclude persons lacking an interest in a controversy from bringing suit (*In re Marriage of Rodriguez*, 131 Ill. 2d 273, 280 (1989)) and to ensure that cases are "truly adversarial and capable of resolution by judicial decision" (*Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 488 (1988)).

¶ 14    Each party contends that the other lacks standing. Defendants argue that the mortgages were not properly transferred to the trust in the manner specified by the PSA. According to defendants, that the PSA was violated means that plaintiff does not have good title to the mortgages and that they are not part of the trust. Therefore, defendants reason, plaintiff is

attempting to assert an interest it does not own. Plaintiff responds that the mortgages were, in fact, transferred to the trust. Even if the manner in which they were transferred did not comply with the PSA, it does not follow that they are not part of the trust. Moreover, since defendants are not parties to the PSA, defendants lack standing to rely upon its provisions.

¶ 15    In support of its argument that defendants lack standing, plaintiff sets forth a number of cases that hold, in essence, that a third party generally lacks standing to challenge the validity of an assignment. See *In re Smoak*, 461 B.R. 510, 519 (Bankr. S.D. Ohio 2011); *Correia v. Deutsche Bank National Trust Co.*, 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011) (*per curiam*); *Livonia Property Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C.*, 717 F. Supp. 2d 724, 735-37 (E.D. Mich. 2010); *Liu v. T&H Machine, Inc.*, 191 F.3d 790, 797-98 (7th Cir. 1999); see also *Schieroni v. Deutsche Bank National Trust Co.*, No. H-10-6113, 2011 WL 3652194, *6 (S.D. Tex. Aug. 18, 2011) ("Courts considering similar allegations have concluded that mortgage debtors lacked standing to challenge the chain of title under the contracts by which the assignments were allegedly made. When, as here, the borrowers are not parties to the assignment contracts, courts decline to find that an attempted foreclosure is invalid or otherwise grant relief."); *Velasco v. Security National Mortgage Co.*, 823 F. Supp. 2d 1061, 1067 (D. Haw. 2011). Indeed, the prevailing rule is that, barring third-party beneficiary status, a litigant lacks standing to attack an assignment to which he or she is not a party. See *Liu*, 191 F.3d at 796-98 (applying Illinois law). Thus, the rule that a third party typically lacks standing to challenge such an assignment is widely accepted.

¶ 16    Exceptions to this principle have been recognized.[2] In *Livonia Property Holdings*, 717 F. Supp. 2d at 735, a federal district court applying Michigan law explained that, while a borrower has an interest in avoiding a foreclosure, the validity of the assignment of a mortgage does not implicate that interest, as it pertains only to whom the borrower owes a debt rather than whether the debt is owed. Therefore, a borrower generally lacks standing to challenge the assignment. *Id.* at 736. However, a borrower may raise a defense to an assignment that would render it "absolutely invalid," that is, void. *Id.* at 735-36; *Tri-Cities Construction, Inc. v. American National Insurance Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. 1975) ("The law is settled that the obligors of a claim may defend the suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice."); *Greene v. Reed*, 486 P.2d 222, 224 (Ariz. Ct. App. 1971); *cf. Young v. Chicago Federal Savings & Loan Ass'n*, 180 Ill. App. 3d 280, 284 (1989) ("If a *valid* assignment is effected, the assignee acquires all of the interest of the assignor in the property that is transferred." (Emphasis added.) (Internal quotation marks omitted.)); *O'Neill v. De Laney*, 92 Ill. App. 3d 292, 297 (1980) (holding that third party could challenge validity of a contract where she established a "significant and direct interest" in its validity).

---

[2]We have not located significant Illinois law on this subject, and the parties do not call our attention to much, aside from some cases setting forth general propositions about standing. Accordingly, we will look for guidance to foreign jurisdictions as well as some secondary material.

¶ 17    The *Livonia Property Holdings* court relied on section 132 of Corpus Juris Secundum (Assignments) (2004), which states, in part, as follows:

> "A debtor may, generally, assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, any matters rendering the assignment absolutely invalid or ineffective, and the lack of the plaintiff's title or right to sue; but, if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his or her shoes." 6A C.J.S. *Assignment*s § 132 (2004).

Hence, this appeal turns on whether noncompliance with the PSA rendered the assignment of the mortgages void or voidable.

¶ 18    As noted above, we will apply New York law in making this determination. We first note that New York has a statute that is pertinent to this issue:

> "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." N.Y. Est. Powers & Trusts Law § 7-2.4 (McKinney 1998).

If this statute controls, the transfer of the mortgages to the trust would appear to be a nullity (we note that this statute has been in effect in New York in some form since at least 1870 (see *Anderson v. Mather*, 44 N.Y. 249 (N.Y. 1870))). Moreover, this is the sort of defense–namely, that the transaction is void under the statute–that defendants would be permitted to raise. *Livonia Property Holdings*, 717 F. Supp. 2d at 735. Indeed, several New York courts have applied the statute, or its predecessors, in such a manner. See, *e.g.*, *In re Application of Dana*, 465 N.Y.S.2d 102, 105 (N.Y. Sup. Ct. 1982); *Dye v. Lewis*, 324 N.Y.S.2d 172, 175 (N.Y. Sup. Ct. 1971).

¶ 19    Other cases, however, indicate that such *ultra vires* acts are merely voidable. Most directly, the court in *Mooney v. Madden*, 597 N.Y.S.2d 775, 776 (N.Y. App. Div. 1993), flatly held that "[a] trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement." The court continued, "This beneficiary consent may be express or implied from the acceptance of the trustee's act or agreement and may be given either after or before the trustee's act, as when the beneficiary or beneficiaries direct the trustee to take the challenged act or enter into the agreement." *Id.* Similarly, in *Washburn v. Rainier*, 134 N.Y.S. 301, 304 (N.Y. App. Div. 1912), the court explained:

> "If a trustee in contravention of his trust dispose of his trust property, the beneficiary can elect to regard the act done for or against his advantage; but he cannot assert both. He may gain the proceeds of the unauthorized act, but that forecloses subsequent disclaiming of interest in it."

Thus, several New York courts have applied the rule that a beneficiary can ratify a trustee's *ultra vires* act. See also *Hine v. Huntington*, 103 N.Y.S. 535, 540 (N.Y. App. Div. 1907) ("We have before this called attention to the fact that the cestui que trust is at perfect liberty to elect to approve an unauthorized investment and enjoy its profits, or to reject it at his option."). Where an act can be ratified, it is voidable rather than void. See *In re Birnbaum*,

503 N.Y.S.2d 451, 456 (N.Y. App. Div. 1986); *Gregan v. Buchanan*, 37 N.Y.S. 83, 85 (N.Y. Sup. Ct. 1896). Accordingly, these cases indicate that *ultra vires* transactions are voidable rather than void. At oral argument, defendants suggested that it did not matter whether the transaction is void or voidable, since there is no indication that it was ratified in either event. Defendants miss the point. They have standing to attack the transaction only if it is void, regardless of whether it was in fact ratified. See *Livonia Property Holdings*, 717 F. Supp. 2d at 735-36.

¶ 20      Other cases similarly suggest that a trustee's unauthorized actions are voidable. In *Feldman v. Torres*, 939 N.Y.S.2d 221, 224 (N.Y. App. Term 2011), the defendant, expressly relying on section 7-2.4 (N.Y. Est. Powers & Trusts Law § 7-2.4 (McKinney 1998)), argued that a loan was void where it was made in contravention of the terms of a trust. The court found summary judgment inappropriate under the circumstances because the "defendant's submissions did not demonstrate as a matter of law that Sherry lacked actual *or apparent authority* to bind the Trust to the note." (Emphasis added.) *Feldman*, 939 N.Y.S.2d at 224. The doctrine of apparent authority applies in the absence of actual authority. See *National Black Theatre Workshop Inc. v. Nubian Properties LLC*, 932 N.Y.S.2d 466, 467 (N.Y. App. Div. 2011). If apparent authority can thwart the application of section 7-2.4, acts of a trustee without actual authority are not necessarily without legal effect, which would suggest that they are voidable rather than void. See *Conservative Party of the State of New York v. New York State Board of Elections*, 652 N.Y.S.2d 463, 465 (N.Y. Sup. Ct. 1996). Similarly, in *In re Pepi*, 701 N.Y.S.2d 915, 916 (N.Y. App. Div. 2000), the court stated, "Since the appellants had reason to know that the conveyance was made in contravention of the trust, the transaction is void." By implication, if the appellants in that case had had no reason to know that the transaction had been made in derogation of the trust, the transaction would not have been void, again suggesting that not all actions taken by a trustee outside his actual authority are without legal effect and, in turn, that section 7-2.4 is not applied literally in New York.

¶ 21      Hence, numerous cases, including several that specifically reference section 7-2.4 (N.Y. Est. Powers & Trusts Law § 7-2.4 (McKinney 1998)), indicate that under various circumstances a trustee's *ultra vires* acts are not void. We recognize that there is a tension between these cases and the apparently plain language of section 7-2.4; however, such matters are for New York courts to reconcile–not this one. That this line of cases exists (particularly the cases recognizing the possibility of ratification, since a void act cannot be ratified (see *Aronoff v. Albanese*, 446 N.Y.S.2d 368, 370 (N.Y. App. Div. 1982))) is enough for us to conclude that such acts are merely voidable. As noted earlier, defendants can prevail only if they can show that the assignment of the mortgages is void. Since defendants' argument concerns voidability rather than voidness, this argument is one that defendants lack standing to make. *Livonia Property Holdings*, 717 F. Supp. 2d at 735-36.

¶ 22      Finally, before moving on to defendants' next argument, we note the following. Defendants, as the appellants, bear the burden before this court of proving error in the proceedings below. *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1173 (2008); *In re Alexander R.*, 377 Ill. App. 3d 553, 557 (2007). Neither party provided a particularly compelling analysis of what the law is on this subject. Indeed, prior

to oral argument, we issued the following advisory order:

> "On the court's own motion, the parties are advised to be prepared to address the following issues at oral argument:
>
>> (1) Whether New York or Illinois law controls regarding whether the mortgages were validly transferred to the trust.
>>
>> (2) *What the laws of New York and Illinois are on this issue* and whether they differ.
>>
>> (3) Whether, for the purpose of standing, there is a difference between an imperfect conveyance and a failed conveyance and whether they would be void or voidable." (Emphasis added.)

Despite this clear guidance, defendants' counsel–during oral argument–professed to be unaware of New York authority adverse to his position, some of which is cited earlier in this opinion. Similarly, plaintiff's attorney attempted to argue that section 7-2.4 did not apply to trusts set up for business purposes, based on the following statutory provision:

> "Unless otherwise stated therein, the provisions of this chapter apply to the estates, and to instruments making dispositions or appointments thereof, *of persons* living on its effective date or born subsequent thereto ***." (Emphasis added.) N.Y. Est. Powers & Trusts Law § 1-1.5 (McKinney 1998).

When asked whether he was aware of anything in New York law that would include corporations within the definition of "persons," counsel replied negatively. However, when this court researched the issue, we quickly found the following, which is a part of the same article of New York's Estates, Powers, and Trusts Law as the statute upon which plaintiff relied in support of this argument:

> "The term 'person' includes a natural person, an association, board, any corporation, whether municipal, stock or non-stock, court, governmental agency, authority or subdivision, partnership or other firm and the state." N.Y. Est. Powers & Trusts Law § 1-2.12 (McKinney 1998).

¶ 23    In any event, we have attempted to undertake a more detailed analysis of New York law, and, admittedly, we have discovered various apparent contradictions. Compare *Mooney*, 597 N.Y.S.2d at 776 ("A trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement [citation]."), with *Knight v. Knight*, 589 N.Y.S.2d 195, 197 (N.Y. App. Div. 1992) (*per curiam*) ("More important, plaintiff has offered no New York or California authority for the proposition that a void assignment of a remainder interest in trust principal may be subsequently ratified [citation], and our research discloses none."). As an Illinois court, we, of course, cannot change New York law, and defendants make no attempt to reconcile these contradictions. It was defendants' burden to answer these questions about the nature of New York law. *TSP-Hope, Inc.*, 382 Ill. App. 3d at 1173. Absent clear answers about the nature of New York law, the burden of persuasion is dispositive. *People v. Glenn*, 363 Ill. App. 3d 170, 174 (2006). Defendants have not demonstrated that the transactions are void or that the trial court erred. Therefore, we are compelled to reject defendants' argument on this issue.

¶ 24                        III. BREACH OF CONTRACT

¶ 25     Defendants next argue that breaches of the PSA by plaintiff preclude summary judgment. Defendants argue that, under the PSA, foreclosure is a last resort. According to defendants, the PSA states that, following a default, corrective action must be taken. It specifies four ways in which a default can be resolved: the loan can be paid current; the loan can be paid in full; there can be an agreed modification; or a foreclosure can be initiated. It further states that a foreclosure can be pursued only if Berkadia has "determined in its 'reasonable and good faith judgment' that 'corrective action has been unsuccessful' and that 'no satisfactory arrangement can be made for the collection of delinquent payments and no other alternative' can be negotiated."

¶ 26     Defendants are not parties to the PSA. This is problematic for them, as, generally, only parties or third-party beneficiaries are entitled to assert rights created by a contract. *Ocasek v. City of Chicago*, 275 Ill. App. 3d 628, 634 (1995). Although in their initial brief they do not attempt to explain why they are entitled to rely on the PSA, in their reply brief they assert that there is a question of material fact as to whether they are third-party beneficiaries.

¶ 27     In Illinois, we distinguish between direct and incidental third-party beneficiaries. See *Advanced Concepts Chicago, Inc. v. CDW Corp.*, 405 Ill. App. 3d 289, 293 (2010). A direct third-party beneficiary is one whom the parties intended to directly benefit from the contract. *Cahill v. Eastern Benefit Systems, Inc.*, 236 Ill. App. 3d 517, 520 (1992). On the other hand, an incidental third-party beneficiary is one who receives an unintended benefit from a contract. *Caswell v. Zoya International, Inc.*, 274 Ill. App. 3d 1072, 1074-75 (1995). Only an intended third-party beneficiary may enforce rights under a contract. *XL Disposal Corp. v. John Sexton Contractors Co.*, 168 Ill. 2d 355, 361 (1995). The operative question is whether the parties to the contract intended to confer a *direct* benefit on the purported third-party beneficiary. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 200 (1999). A strong presumption exists that parties intend a contract to apply solely to themselves. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). That the parties expect, know, or even intend that the contract benefit others is insufficient to overcome the presumption that the contract was intended only for the parties' *direct* benefit. *Id.*; *Barney v. Unity Paving, Inc.*, 266 Ill. App. 3d 13, 19 (1994).

¶ 28     Defendants contend that the language in the PSA requiring Berkadia to take certain steps before a foreclosure is initiated "can only be read to confer a direct benefit on Mortgagors." We disagree. It might, for example, be intended to reduce the amount of litigation in which plaintiff is involved. Read in isolation, such provisions could be construed as ambiguous and raise a question of fact as to the intent of the parties to the PSA. However, it is axiomatic that a contract must be read as a whole, giving effect to all of its provisions. *J.M. Process Systems, Inc. v. W.L. Thompson Electric Co.*, 218 Ill. App. 3d 350, 354 (1991). Relevant here, the PSA contains the following provision:

    "Nothing in this agreement or in the Certificates, express or implied, shall give to any Person other than the parties to the Agreement and their successors hereunder and the Holders of the Certificates, any benefit or any legal or equitable right, power, remedy[,] or claim under this Agreement."

It also states, "[t]his Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns." Moreover, it also directs the servicers of the mortgages to administer loans "for the sole benefit of the Certificateholders." These three provisions clearly and unambiguously manifest an intent to limit rights under the PSA to those who are parties to it. As such, any construction of the language in the PSA upon which defendants rely that extends benefits to third parties must fail, and any construction that limits such benefits (such as that the provisions are intended to minimize litigation) is preferred. In other words, defendants have shown no clear intent on the part of the parties to the PSA to make them third-party beneficiaries (in fact, we agree with plaintiff's observation at oral argument that it would be absurd for the parties to intend to confer on defendants a benefit that would make it more difficult for plaintiff to foreclose should the need arise). As we reach this conclusion by construing the language of the PSA, defendants' argument fails as a matter of law (*Guerrant v. Roth*, 334 Ill. App. 3d 259, 263 (2002)), and summary judgment is therefore appropriate (*Continental Mobile Telephone Co. v. Chicago SMSA Ltd. Partnership*, 225 Ill. App. 3d 317, 322 (1992)).

¶ 29　　　Before closing, we note defendants' misplaced reliance on two federal cases (which, in any event, are not binding upon this court (*Citibank, N.A. v. McGladrey & Pullen, LLP*, 2011 IL App (1st) 102427, ¶ 21). In each case, the court disregarded similar language purporting to limit contractual rights to parties to the contract and permitted third parties to enforce the contract. However, one (an unpublished federal district court case) involved a contract for the maintenance of certain aircraft. The third party was explicitly identified in the contract as the owner of the relevant aircraft and was a joint venture partner of one of the signatories. See *Tradewinds Aviation, Inc. v. Jet Support Services, Inc.*, No. 04-C-1406, 2004 WL 2533728 (N.D. Ill. Sept. 28, 2004). No similar facts exist in the instant case. Similarly, in *American United Logistics, Inc. v. Catellus Development Corp.*, 319 F.3d 921, 930-31 (7th Cir. 2003), the third party was expressly identified and granted authority to operate a warehouse, such that the contract conferred a direct benefit upon the third party. Defendants point to no similar provision in the PSA. As such, both of these cases are distinguishable.

¶ 30　　　In sum, defendants are not entitled to the protection of the PSA.

¶ 31　　　　　　　　　　　　　　　IV. CONCLUSION

¶ 32　　　In light of the foregoing, the order of the circuit court of Du Page County granting summary judgment in favor of plaintiff is affirmed.

¶ 33　　　Affirmed.

¶ 34　　　　　SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

¶ 35　　　Defendants have filed a petition for rehearing. Defendants advance a number of arguments, none of which we find persuasive. We find that defendants' submission requires us to comment only on some of the points.

¶ 36　　　Defendants attempt to draw a distinction between acts that are not authorized by a trust

instrument and those that are specifically forbidden by it. Defendants suggest that the former are voidable and the latter are void. We do not find this contention persuasive. See *Washburn v. Rainier*, 134 N.Y.S. 301, 304 (N.Y. App. Div. 1912) ("If a trustee *in contravention of his trust* [were to] dispose of his trust property, the beneficiary can elect to regard the act done for or against his advantage; but he cannot assert both." (Emphasis added.)). Defendants assert, for example, that *Mooney v. Madden*, 597 N.Y.S.2d 775 (N.Y. App. Div 1993), a case recognizing that beneficiaries can ratify a trustee's *ultra vires* act, supports their position because "[n]othing in *Mooney* indicates that the [trustee's act] was in direct contravention to the express terms of the trust." While this is true, the fact that *Mooney* does not discuss this point is equally consistent with the proposition that whether the trust expressly forbade the trustee's act or simply did not authorize it was not relevant to the *Mooney* court's analysis.

¶ 37    Defendants also attempt to sidestep *In re Pepi*, 701 N.Y.S.2d 915, 916 (N.Y. App. Div. 2000), where a New York court flatly held that, where the defendants had reason to know that a transaction was made in contravention of a trust, the transaction was void. Defendants contend that it would be mere speculation to conclude that, had the defendants in *Pepi* not had reason to know that the transaction violated the terms of the trust, the court would not have determined that it was void. We cannot fathom why the *Pepi* court would have mentioned the state of mind of the defendants if it was not relevant to the question before it.

¶ 38    We note that, in its response to defendants' petition for rehearing, plaintiff sets forth New York case law holding that "void" can sometimes be read as "voidable" in New York statutes. See, *e.g.*, *People v. Robertson*, 403 N.Y.S.2d 234, 236 (N.Y. App. Div. 1978); *220 West 42 Associates v. Cohen*, 302 N.Y.S.2d 494, 497 (N.Y. App. Term 1969) (*per curiam*) ("[T]he word 'void' in section 231(1) actually means voidable at the option of the landlord ***."); see also *In re Vanity Fair Shoe Corp.*, 84 F. Supp. 533, 534 (S.D.N.Y. 1949). Defendants attempt to distinguish such cases on various bases (*Robertson* and *220 West 42 Associates* involve wrongdoing by one of the parties, an element not present here); however, the underlying rationale for this principle is that New York courts try to apply statutes in a manner that makes sense and is consistent with the intent of the legislature. We note that New York courts follow the familiar principle that, "[a]lthough statutes will ordinarily be accorded their plain meaning, it is well settled that courts should construe them to avoid objectionable, unreasonable or absurd consequences." (Internal quotation marks omitted.) *In re County of Albany*, 944 N.Y.S.2d 369, 375 (N.Y. App. Div. 2012). We simply do not see how the New York legislature could have intended to allow a debtor in a commercial transaction to invoke the provisions of a trust to which it is a stranger in order to frustrate the collection of the debt.

¶ 39    Finally, we emphasize that both this supplemental opinion and our original opinion in this appeal are based primarily upon defendants' failure to carry their burden of demonstrating error. See *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1173 (2008). We note that defendants refer to the position "adopted by this Court" regarding the content of New York law. To be clear, the position we adopt is that defendants have not clearly shown an entitlement to prevail on appeal based upon the law of either New York or this state. Having considered defendants' arguments and addressed those we deemed

necessary, we now deny defendants' request for rehearing.