# Illinois Official Reports

## Appellate Court

<div style="border: double;">

*Hollywood Boulevard Cinema, LLC v. FPC Funding II, LLC*,
2014 IL App (2d) 131165

</div>

| | |
|---|---|
| Appellate Court Caption | HOLLYWOOD BOULEVARD CINEMA, LLC, Plaintiff and Counterdefendant, v. FPC FUNDING II, LLC, Defendant and Counterplaintiff-Appellee (Lyon Financial Services, Inc., d/b/a U.S. Bancorp Equipment Finance, Inc., Nationwide Recovery Systems, Ltd., and West Suburban Bancorp, Inc., Defendants; Ted E. Bulthaup III, a/k/a Edwin C. Bulthaup III, a/k/a Ted C. Bulthaup III, Counterdefendant-Appellant). |
| District & No. | Second District<br>Docket No. 2-13-1165 |
| Filed | November 17, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings arising from defendant's attempt to recover on an equipment finance lease for the seats and an elevator used in a theater operated by plaintiff, the trial court properly entered summary judgment for defendant on its counterclaim to recover on counterdefendant's personal guaranty of the lease, notwithstanding counterdefendant's contention that defendant failed to present a written assignment of the lease or other sufficient evidence that the lease was assigned to defendant, since counterdefendant forfeited his argument by failing to cite any authority or anything in the record supporting his argument, but rather he only made conclusory assertions without citing any authority or making any explanation, such as the claim that certain affidavits presented on defendant's behalf were not "sufficient to prove" that the lease was assigned to defendant. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-MR-852; the Hon. Bonnie M. Wheaton, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Kenneth M. Sullivan and Kevin J. Mahoney, both of Tressler LLP, of Chicago, for appellant. |
| | D. Alexander Darcy and Amrit S. Kapai, both of Askounis & Darcy, P.C., of Chicago, for appellee. |

| | |
|---|---|
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices Hutchinson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1     Counterdefendant, Ted E. Bulthaup III, is the managing member of Hollywood Boulevard Cinema, LLC (Hollywood), which operates a movie theater in Woodridge, Illinois. Hollywood entered into an equipment finance lease with IFC Credit Corporation (IFC), for the lease of 1,200 movie theater seats and a custom-made elevator, and Bulthaup personally guaranteed Hollywood's obligations under the lease. IFC allegedly assigned the lease and personal guaranty to counterplaintiff, FPC Funding II, LLC (FPC), which, upon being sued by Hollywood, filed a counterclaim against Bulthaup for breach of the personal guaranty. Bulthaup appeals the grant of summary judgment in FPC's favor on its counterclaim. For the following reasons, we affirm.

¶ 2                          I. BACKGROUND
¶ 3     In its declaratory judgment complaint, Hollywood alleged the following. After it entered into the equipment finance lease with IFC, Hollywood tendered a $20,565 security deposit to IFC and began making monthly lease payments. Later, Hollywood sent $10,000 to IFC as prepayment of monthly lease payments, but IFC never acknowledged receiving the payment. Instead, Hollywood received a letter from FPC directing Hollywood to send its monthly lease payments to FPC. Subsequently, Hollywood received communications from Lyon Financial Services, Inc., d/b/a U.S. Bank Portfolio Services (U.S. Bank), and Nationwide Recovery Systems, Ltd. (Nationwide), indicating that they were entitled to receive the lease payments. Nationwide asserted that it was collecting the lease payments on behalf of West Suburban Bancorp, Inc. (West Suburban). Meanwhile, IFC filed for bankruptcy, and Hollywood ceased

making monthly lease payments in light of "the refusal of any party to provide it with proof that it had been assigned some right in the Lease."

¶ 4    In its original complaint, Hollywood sought declarations that U.S. Bank, Nationwide, and West Suburban were not entitled to receive lease payments. Subsequently, both West Suburban and Nationwide were dismissed from the action after they expressly disclaimed any right to the lease payments. Thereafter, Hollywood filed an amended complaint seeking declarations that neither U.S. Bank nor FPC was entitled to receive lease payments.

¶ 5    FPC then filed counterclaims against Hollywood and Bulthaup, alleging breach of the lease and breach of the personal guaranty, respectively. Hollywood filed for bankruptcy, and proceedings against it were stayed. Proceedings against Bulthaup for breach of the personal guaranty continued. FPC's counterclaim against Bulthaup alleged that IFC had assigned the lease and personal guaranty to FPC. FPC further alleged that Hollywood defaulted on the lease when it ceased making monthly lease payments and that Bulthaup was required to honor Hollywood's obligations.

¶ 6    FPC moved for summary judgment on its counterclaim against Bulthaup. FPC argued that the exhibits attached to its motion established "a valid sale and assignment" of the lease and personal guaranty from IFC to FPC. FPC contended that there was no genuine issue of material fact as to FPC's ownership or as to Bulthaup's liability.

¶ 7    Attached to FPC's summary-judgment motion were affidavits from Rebecca Elli, Jayan Krishnan, and Jodi White. Elli was a former attorney for IFC. Krishnan was senior vice president of DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt AM Main (DZ Bank). White was a loss mitigation/workout specialist employed by U.S. Bank.

¶ 8    The affidavits described the relationship among six entities: IFC, FPC, U.S. Bank, DZ Bank, Autobahn Funding Company, LLC (Autobahn), and Wells Fargo Bank (Wells Fargo). In 2003, IFC and FPC entered into a purchase agreement, under which IFC agreed to assign to FPC "from time to time" equipment finance leases originated by IFC. In 2005, the six entities entered into a "Receivables Loan and Security Agreement" (RLSA), which defined FPC as the borrower, IFC as the servicer, Autobahn as the lender, DZ Bank as the lender's agent, and Wells Fargo as the custodian. Under the RLSA, Autobahn agreed to make loans to FPC "from time to time," secured by assets that FPC pledged to DZ Bank, as Autobahn's agent. The pledged assets were to include equipment finance leases that IFC assigned to FPC pursuant to the purchase agreement. Under the RLSA, after FPC pledged leases to DZ Bank in exchange for loans from Autobahn, IFC would act as servicer of the leases, continuing to collect lease payments and enforce the lease terms. In 2007, the parties to the RLSA named U.S. Bank as the "backup replacement servicer," meaning that U.S. Bank would replace IFC as servicer of the leases if IFC defaulted on its obligations as servicer.

¶ 9    According to White's affidavit, "[o]n or about July 10, 2008, IFC assigned the [Hollywood] Lease to FPC." According to Krishnan's affidavit, on December 2, 2008, pursuant to the RLSA, FPC pledged the Hollywood lease, along with a number of other leases, to DZ Bank as collateral for a loan from Autobahn in the amount of $1,146,653.55. According to White's affidavit, on July 2, 2009, DZ Bank terminated IFC as servicer of the pledged leases and authorized U.S. Bank to service the leases.

¶ 10   FPC further argued in its summary-judgment motion that a settlement agreement entered in IFC's bankruptcy proceeding "re-affirm[ed]" that IFC had assigned the Hollywood lease to FPC. Attached to FPC's motion was a March 31, 2011, order entered in IFC's bankruptcy

- 3 -

proceeding approving a settlement agreement among the chapter 7 bankruptcy trustee, Autobahn, and DZ Bank. In sum, to settle conflicting claims concerning the leases that FPC had pledged to Autobahn and DZ Bank, the trustee agreed, among other provisions, to "irrevocably acknowledge and agree that the Sold Leases [including the Hollywood lease] were sold to and thus are the sole and exclusive property of FPC Funding, free of any claims of the Debtor's Estate or the Trustee."

¶ 11    Bulthaup responded to FPC's summary-judgment motion by arguing that none of the exhibits on which FPC relied established that IFC assigned the Hollywood lease to FPC. In particular, Bulthaup argued that, under the purchase agreement between IFC and FPC, a "condition precedent" to any assignment was IFC's delivery to FPC of a written, dated assignment listing the lease being conveyed. Bulthaup noted that FPC had never produced any such written assignment.

¶ 12    On October 4, 2013, the trial court granted FPC's motion for summary judgment and entered judgment against Bulthaup in the amount of $167,314.46, which included $50,266.82 in attorney fees and costs. The order included a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason for delaying either enforcement or appeal of the judgment.

¶ 13    On November 4, 2013, Bulthaup filed both a notice of appeal from the October 4, 2013, judgment and a motion to reconsider the judgment. In his motion to reconsider, Bulthaup challenged only the amount of attorney fees and costs. The trial court granted Bulthaup's motion to reconsider and vacated the portion of the judgment awarding attorney fees and costs. On February 10, 2014, following a hearing on the reasonableness of attorney fees, the court entered an amended judgment in the amount of $159,992.46, reflecting a reduced award of attorney fees and costs. Bulthaup did not file a new or an amended notice of appeal.

¶ 14                                              II. ANALYSIS

¶ 15    On appeal, Bulthaup argues that the trial court erred in granting FPC's motion for summary judgment on its counterclaim. Before addressing this issue, however, we must determine whether we have jurisdiction over the appeal.

¶ 16                                              A. Jurisdiction

¶ 17    Because other claims remained pending when the trial court granted FPC's motion for summary judgment on its counterclaim, Bulthaup's appeal from the October 4, 2013, judgment is pursuant to Rule 304(a). In Rule 304(a) appeals, the time for filing a notice of appeal is governed by Illinois Supreme Court Rule 303 (eff. May 30, 2008). Rule 303(a)(1) provides that, if a timely postjudgment motion has been filed, the time for filing a notice of appeal is within 30 days after the entry of the order disposing of the last pending postjudgment motion. If a party prematurely files a notice of appeal before the last pending postjudgment motion has been ruled upon, Rule 303(a)(2) provides that the notice of appeal becomes effective when the order disposing of the last pending postjudgment motion is entered. Rule 303(a)(2) further provides:

> "A party intending to challenge an order disposing of any postjudgment motion or separate claim, or a judgment amended upon such motion, must file a notice of appeal, or an amended notice of appeal within 30 days of the entry of said order or amended

judgment, but where a postjudgment motion is denied, an appeal from the judgment is deemed to include an appeal from the denial of the postjudgment motion." Ill. S. Ct. R. 303(a)(2) (eff. May 30, 2008).

In other words, "[a] party intending to challenge *** a judgment amended upon" a postjudgment motion must file a new or an amended notice of appeal within 30 days of the "amended judgment."

¶ 18    Bulthaup contends that his premature notice of appeal filed on November 4, 2013, became effective when the trial court granted his motion to reconsider the October 4, 2013, judgment. According to Bulthaup, even though the court entered an amended judgment upon granting his motion to reconsider, he was not required to file a new or an amended notice of appeal, because the court did not vacate the October 4, 2013, judgment in its entirety. He contends that his notice of appeal confers jurisdiction on this court to review the portion of the October 4, 2013, judgment that was undisturbed by the amendment.

¶ 19    In order to resolve Bulthaup's jurisdictional argument, we must interpret Rule 303(a)(2). When interpreting a supreme court rule, we look to the principles of statutory interpretation for guidance. *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998). Under those principles, our primary objective is to ascertain and give effect to the intent of the rule's drafters. *In re Storment*, 203 Ill. 2d 378, 390 (2002). The most reliable indicator of their intent is the language of the rule itself, given its plain and ordinary meaning. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002). "If *** we determine that [a] rule is ambiguous, or susceptible to more than one reasonable interpretation, we may consider the committee comments, the reason and necessity for the rule, and the purpose to be served by it." *Friedman v. Thorson*, 303 Ill. App. 3d 131, 135 (1999).

¶ 20    Rule 303(a)(2)'s requirement that "[a] party intending to challenge *** a judgment amended upon" a postjudgment motion must file a new or an amended notice of appeal within 30 days of the entry of said "amended judgment" is susceptible to more than one reasonable interpretation. It could be read to require a new or an amended notice of appeal only if the party is challenging a judgment *insofar as it is amended*. In other words, the party would need to file a new or an amended notice of appeal only if challenging the amendment to the judgment. Or, it could be read to require a new or an amended notice of appeal if the party is challenging a judgment that *has been amended*. Under this reading, even if the party is challenging only the undisturbed portion of the original judgment, and not the amendment to the judgment, it still must file a new or an amended notice of appeal within 30 days of the entry of the amended judgment.

¶ 21    Because Rule 303(a)(2) is ambiguous, we may turn for guidance to the committee comments on the rule and to the reason and purpose underlying the rule. *Friedman*, 303 Ill. App. 3d at 135. The committee comments note that paragraph (a)(2) was amended to address cases such as *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337 (2001), which dismissed appeals for lack of jurisdiction because the prior version of Rule 303(a)(2) contained no saving provision for premature notices of appeal. Ill. S. Ct. R. 303, Committee Comments (adopted Mar. 16, 2007). The comments explain that amended Rule 303(a)(2) "protects the rights of an appellant who has filed a 'premature' notice of appeal by making the notice of appeal effective when the order denying a postjudgment motion or resolving a still-pending separate claim is entered." Ill. S. Ct. R. 303, Committee Comments (adopted Mar. 16, 2007).

¶ 22    Although the committee comments discuss the protection that Rule 303(a)(2) provides to appellants when a postjudgment motion is denied, they caution that the rule does not necessarily provide such protection when a postjudgment motion is granted:

> "Note that under subparagraph (a)(2), there is no need to file a second notice of appeal where the postjudgment order simply denies the appellant's postjudgment motion. However, where the postjudgment order grants new or different relief than the judgment itself, or resolves a separate claim, a second notice of appeal is necessary to preserve an appeal from such order." Ill. S. Ct. R. 303, Committee Comments (adopted Mar. 16, 2007).

Thus, if a postjudgment motion is granted and the court awards "new or different relief than the judgment itself," then a new or an amended notice of appeal is necessary to appeal from the order granting the postjudgment motion and awarding the new or different relief.

¶ 23    We conclude that the committee comments resolve the ambiguity in Rule 303(a)(2). In explaining the need for a new or an amended notice of appeal when a postjudgment motion is granted, the comments distinguish between the "postjudgment order grant[ing] new or different relief" and the "judgment itself." The comments explain that a new or an amended notice of appeal is necessary to preserve an appeal from a "postjudgment order grant[ing] new or different relief." However, they do not say that a new or an amended notice of appeal is necessary to preserve an appeal from the undisturbed portion of the original judgment. Therefore, we conclude that the drafters intended to require a party to file a new or an amended notice of appeal following the entry of an amended judgment only if the party intends to challenge the amendment to the judgment.

¶ 24    We find support for our interpretation of Rule 303(a)(2) in the federal rules of appellate procedure. The drafters of the federal rules addressed and resolved the same ambiguity that our Rule 303(a)(2) presents. Prior to its amendment in 1998, Federal Rule of Appellate Procedure 4(a)(4) (eff. Dec. 1, 1993) required a party to file a new or an amended notice of appeal following the entry of an amended judgment only if the party was "intending to challenge an alteration or amendment of the judgment." The committee comments confirmed that a new or an amended notice of appeal was unnecessary if the party was not challenging the alteration or amendment of the judgment. Fed. R. App. P. 4, Committee Comments (1993).

¶ 25    In 1998, the drafters amended the rule and expressly stated that the changes were "intended to be stylistic only." Fed. R. App. P. 4, Committee Comments (1998). Following its amendment in 1998, Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) (eff. Dec. 1, 1998) provided:

> "A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), *or a judgment altered or amended upon such a motion*, must file a notice of appeal, or an amended notice of appeal–in compliance with Rule 3(c)–within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion." (Emphasis added.)

In *Sorensen v. City of New York*, 413 F.3d 292 (2d Cir. 2005), the Second Circuit explained that the "stylistic" amendments to the rule inadvertently introduced an ambiguity. *Sorensen*, 413 F.3d at 296 n.2. The court explained that the phrase "a judgment altered or amended upon" a postjudgment motion "could be read strictly and onerously" to require a new or an amended notice of appeal in circumstances unintended by the rule's drafters. (Internal quotation marks omitted.) *Sorensen*, 413 F.3d at 296 n.2. For example, the rule "could be read to expand the

obligation to file an amended notice to circumstances where the ruling on the post-trial motion alters the prior judgment in an insignificant manner or in a manner favorable to the appellant, even though the appeal is not directed against the alteration of the judgment." *Sorensen*, 413 F.3d at 296 n.2.

¶ 26 In response to the concerns raised in *Sorensen*, the drafters amended the rule by returning to language similar to that in the pre-1998 rule:

> "A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), *or a judgment's alteration or amendment upon such a motion*, must file a notice of appeal, or an amended notice of appeal–in compliance with Rule 3(c)–within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion." (Emphasis added.) Fed. R. App. P. 4(a)(4)(B)(ii) (eff. Dec. 1, 2009).

According to the committee comments, the "amendment removes that ambiguous reference to 'a judgment altered or amended upon' a post-trial motion, and refers instead to 'a judgment's alteration or amendment' upon such a motion." Fed. R. App. P. 4, Committee Comments (2009). The comments further explain that a new or an amended notice of appeal is required only "when an appellant wishes to challenge an order disposing of a [postjudgment motion] or a judgment's alteration or amendment upon such a motion." Fed. R. App. P. 4, Committee Comments (2009). In essence, the drafters clarified that, despite the inadvertent ambiguity introduced by the "stylistic" 1998 amendments, the rule had the same meaning all along.

¶ 27 Because the saving provision was added to our Rule 303(a)(2) in 2007, it was modeled after the version of the federal rule that existed between 1998 and 2009. Indeed, the committee comments explaining the 2007 amendment to Rule 303(a)(2) contain a citation to the federal rule. Ill. S. Ct. R. 303, Committee Comments (adopted Mar. 16, 2007). Unfortunately, this means that Rule 303(a)(2) inherited the ambiguity that the "stylistic" amendments to the federal rule inadvertently introduced. Thus, although Rule 303(a)(2) has not been amended in the same manner as the federal rule, the history of the federal rule and the committee comments on our rule make clear that the drafters intended for Rule 303(a)(2) to mean the same thing that the federal rule always meant, which is that a party must file a new or an amended notice of appeal only if challenging the alteration or amendment of a judgment upon a postjudgment motion.

¶ 28 Based on the foregoing, we conclude that, to the extent that Bulthaup challenges only the undisturbed portion of the October 4, 2013, judgment, he was not required to file a new or an amended notice of appeal after the trial court amended the judgment. Bulthaup's premature notice of appeal filed on November 4, 2013, became effective once the court disposed of his postjudgment motion on February 10, 2014, and it confers jurisdiction on this court to review the undisturbed portion of the October 4, 2013, judgment.

¶ 29 B. Summary Judgment

¶ 30 Bulthaup maintains that the trial court erred in granting summary judgment in FPC's favor on its counterclaim. He contends that the purchase agreement between IFC and FPC required a written, dated assignment of the lease to FPC, which never occurred. He also contends that the bankruptcy court's approval of the settlement agreement among IFC's bankruptcy trustee, Autobahn, and DZ Bank did not establish that IFC assigned the lease to FPC.

¶ 31    FPC responds that, because Bulthaup was not a party to the assignment, he lacks standing to challenge it. Alternatively, FPC maintains that the exhibits attached to its summary-judgment motion, including the settlement agreement in IFC's bankruptcy proceeding, established that there was no genuine issue of material fact regarding its ownership of the lease.

¶ 32    Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). A court ruling on a motion for summary judgment must construe the pleadings and the evidentiary material strictly against the movant. *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010). "A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts." *Morrissey*, 404 Ill. App. 3d at 724. Our review of an order granting summary judgment is *de novo*. *Gillespie v. Community Unit School District No. 7*, 2014 IL 115330, ¶ 27.

¶ 33    An assignment occurs when there is a transfer of some identifiable interest from the assignor to the assignee. *Stoller v. Exchange National Bank of Chicago*, 199 Ill. App. 3d 674, 681 (1990). Generally, no particular form of assignment is required; rather, any document that evidences the assignor's intent to vest ownership of the interest in the assignee is sufficient to effect an assignment. *Klehm v. Grecian Chalet, Ltd.*, 164 Ill. App. 3d 610, 616 (1987). However, an assignment can be oral or written. *Klehm*, 164 Ill. App. 3d at 616. "When there is no writing to evidence the intention to transfer some identifiable property, claim or right, it is necessary to scrutinize the surrounding circumstances and acts of the parties to ascertain their intentions." *Strosberg v. Brauvin Realty Services, Inc.*, 295 Ill. App. 3d 17, 30 (1998).

¶ 34    In *Bank of America National Ass'n v. Bassman FBT, L.L.C.*, 2012 IL App (2d) 110729, this court addressed the issue of whether a litigant who was not a party to an assignment had standing to challenge it. In *Bassman*, the plaintiff bank was the trustee of a trust that held mortgages pursuant to a pooling and services agreement (PSA). *Bassman*, 2012 IL App (2d) 110729, ¶ 4. The defendant executed certain mortgages, which were then transferred to the trust in a manner contrary to that set forth in the PSA. *Bassman*, 2012 IL App (2d) 110729, ¶ 4. The plaintiff, as trustee of the trust, successfully foreclosed on the mortgages, and the defendant appealed. *Bassman*, 2012 IL App (2d) 110729, ¶ 2. On appeal, the defendant argued that the plaintiff lacked standing to foreclose on the mortgages, because of noncompliance with the PSA. *Bassman*, 2012 IL App (2d) 110729, ¶ 14. The plaintiff responded that, regardless of the manner in which the mortgages were transferred to the trust, the defendant lacked standing to raise the issue, because he was not a party to the PSA. *Bassman*, 2012 IL App (2d) 110729, ¶ 14.

¶ 35    This court agreed with the plaintiff. We noted that, although there was little Illinois law on point, the "widely accepted" rule is that, "barring third-party beneficiary status, a litigant lacks standing to attack an assignment to which he or she is not a party." *Bassman*, 2012 IL App (2d) 110729, ¶ 15. Relying on a federal district court case, we noted that there are exceptions to this rule. *Bassman*, 2012 IL App (2d) 110729, ¶ 16 (citing *Livonia Property Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C.*, 717 F. Supp. 2d 724, 735-36 (E.D. Mich. 2010)). Specifically, although a litigant who is not a party to an assignment generally lacks standing to raise any defense to an assignment that would render it merely voidable, a litigant

"may raise a defense to an assignment that would render it 'absolutely invalid,' that is, void." *Bassman*, 2012 IL App (2d) 110729, ¶ 16 (quoting *Livonia Property Holdings*, 717 F. Supp. 2d at 735-36). Ultimately, we concluded that noncompliance with the PSA rendered the assignment of the mortgages to the trust merely voidable and that the defendant lacked standing to raise the issue. *Bassman*, 2012 IL App (2d) 110729, ¶ 21.

¶ 36 We agree with FPC that, because Bulthaup was not a party to the purchase agreement between IFC and FPC, he lacks standing to assert noncompliance with the agreement as a basis to challenge the assignment of the lease from IFC to FPC. Bulthaup notes that the purchase agreement provided that a "condition precedent" to an assignment was FPC's receipt of a written, dated assignment from IFC listing the lease being conveyed. As Bulthaup correctly points out, FPC never produced any such written assignment. However, because an assignment can be oral or written, IFC's failure to execute a written assignment would not render the assignment void. See *Klehm*, 164 Ill. App. 3d at 616 (an assignment can be oral or written). At most, it would render the assignment voidable at the election of either IFC or FPC. Thus, Bulthaup lacks standing to challenge the assignment.

¶ 37 To the extent that Bulthaup argues that FPC presented insufficient evidence of an assignment, which is an argument that arguably he would have standing to make, he has forfeited it. Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013) requires an appellant's brief to contain argument supported by citation to authority and to the record. *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38. An appellant's failure to support his or her argument with citation to authority can forfeit consideration of the issue. *Petrik*, 2012 IL App (2d) 110495, ¶ 38. " ' "The appellate court is not a depository in which the appellant may dump the burden of argument and research." ' " *Petrik*, 2012 IL App (2d) 110495, ¶ 38 (quoting *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23, quoting *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986)).

¶ 38 Bulthaup fails to cite a single authority defining an assignment, discussing the principles used to determine whether an assignment has occurred, or addressing the standards for affidavits offered in support of a summary-judgment motion. Instead, he makes the conclusory assertion that Elli's and White's affidavits were not "sufficient to prove that IFC assigned the Lease." He provides no authority or explanation for why the affidavits were insufficient. He also maintains that the settlement agreement in IFC's bankruptcy proceeding was not evidence of an assignment. However, in the portion of his brief addressing the settlement agreement, he again fails to cite a single authority. Accordingly, Bulthaup has forfeited his argument that FPC presented insufficient evidence of an assignment.

¶ 39                                   III. CONCLUSION
¶ 40 For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 41 Affirmed.